CHANCERY.

April 22.

# Curling's Administrators and Others *against* Curling's Heirs.

[Mr. R. Wickliffe Jr. for appellants: Mr. Owsley and Mr. J. T. Morehead for appellees.]

FROM THE CIRCUIT COURT FOR TRIGG COUNTY.

Chief Justice ROBERTSON delivered the opinion of the Court.

*Devise of the whole estate of the testator (who died childless,) to his wife for life, remainder (except a slave manumitted,) to the use, privilege and benefit of a public seminary —the property not to be sold, but rented and hired out for the purpose aforesaid:—*

*As a will is understood as speaking at the testator's death, as to slaves, those which the testator acquired after the date of this will, passed by it.*

*Held that the devise over is a charity, within the 43 Eliz. not void, but valid— creating a charitable trust, which may be lawfully and judicially upheld & executed. And—*

*The testator, by designating a general object of charity—" a public seminary," must be understood as intending, either a seminary or the seminary of his county, or any which his executors or a court of*

JAMES CURLING—who died in 1833—by his will, published in 1815, devised his estate to his wife during her life, and then made the following devise:—"And at the "decease of my said wife, it is my will and desire that "my negro boy Harry shall cease from slavery and be "emancipated and set free, and that the remaining part "of my estate shall be left for the use, privilege and "benefit of a public seminary—that the said property "shall not be sold, but rented and hired out for the pur- "pose aforesaid."

It appears that, at the time of his death, the testator, who was childless, owned a tract of land, of no great value, in the county of Trigg, on which he had continued to reside from some time prior to the date of his will, a few slaves, some of whom he had acquired after the publication of his will, and an inconsiderable personal estate.

Mrs. Curling, the devisee for life, having renounced the will and taken dower, the appellees, claiming the estate as the collateral kindred of the testator, and insisting that the devise *to the use of " a public seminary"* was void, filed a bill in chancery against the administrators with the will annexed, for settlement and distribution.

The administrators denied that the devise was void; and having made their answer a cross bill, and made the Attorney General a defendant to it, they prayed for a decree for applying the testator's bounty in aid of some seminary of learning already established, or to the founding of a new one.

The trustees of the Trigg county Seminary, established and organized since the date of the will, being afterwards made defendants to the original bill, filed an answer in which they insisted that the institution under their superintendence was entitled to the fund dedicated by the will " to the use, privilege, and benefit of a public seminary."

The Circuit Court, being of the opinion that the devise to "a public seminary" was void, dismissed the cross bill, and decreed that the appellees were entitled to the estate as heirs and distributees. And, by consent, this appeal is prosecuted by the administrators and trustees, for reversing that decree.

As hitherto decided, the will as to the slaves should be understood as speaking at the testator's death, and therefore, those acquired after the publication, passed by the will.

The devise *to a public seminary* is evidently a charity within the scope and protection of the statute of 43*rd Elizabeth.* And, as the testator has manifested an intention to dedicate his estate to one specified class of objects embraced by the statute, if his bounty can be applied to any single object within that class, consistently with his declared purpose, and without the hazard of violating his will, or of making a will for him, there is no doubt, that a trust exists which may be lawfully executed and judicially upheld and enforced.

Now, though the devise to "a public seminary" may not necessarily identify any one institution of learning, yet, according to the well established exposition of the statute of Elizabeth, this devise is not, as at common law, *void.* The statute makes it valid, according to the British doctrine. And if it can be *judicially* executed, it is good according to the Kentucky doctrine also.

So far as the Chancellor of England has applied an indefinite charity to a specific object in a class of objects not designated by the *donor,* or has applied the donor's bounty to a purpose different from that to which it was dedicated by himself, we should be unwilling to follow the example. The *cy pres* doctrine of the civil law, as applied by the Chancellor of England to charities, is

*Spring Term 1839.*

*Curling's Administrators &c.*
vs
*His Heirs.*

equity, in the exercise of a sound judicial discretion, should select.

As the fund is not sufficient to found a new institution, it is presumed, that the testator intended it for one that was or might be already established. And that the seminary in the testator's county, the only one there,—tho it was established after the date of his will—is entitled to the benefit of the devise, on the ground that the testator would probably have preferred it, and the ground also, that that selection, by the executors, or by the Chancellor, would be most appropriate. A trustee to be appointed by the court below, to manage the estate, for the use of the seminary.

Spring Term
1839.

Curling's Ad-
ministrators &c.
vs
His Heirs.

not, to its full extent, a judicial doctrine, and so far as it is *ultra judicial* it cannot be recognized by courts of equity here.

But, in this case, the testator, by designating a general object of charity, (*'a public seminary,'*) must be understood as intending either *a* seminary or *the* seminary of his county, or any seminary which his executors or a court of equity, in the exercise of a sound discretion, should select as best adapted to effect the object of the charity. And upon either of these hypotheses, the testator's purpose, as declared, and circumscribed by himself, may be fulfilled by applying the fund to a specific object without any hazard of perverting his bounty in a manner not contemplated by him and authorized by his will.

If property be devised to education, it could not, in our opinion, be judicially diverted to religion, or the relief of the poor or the sick, or to general charity, or to any other object than that designated by the testator. Nor, if he shall have dedicated it to a designated college, could a court of equity authorize or sanction the application of it to an essentially different institution; because, by doing so, the Court might apply the charity to a specific object to which the testator did not intend that it should be applied, and to which he never would have devised it.

But no such unjudicial latitude of discretion is necessary for applying the charity in this case. And therefore, according to principles well established as perfectly judicial, we are of the opinion that the devise created a charitable trust which may be executed according to law, and without violating the will of the testator, or making a will for him.

The only doubt we feel, is as to the precise application of the charity in such a mode as will accord most certainly and fully with the testator's object.

The value of the property devised appears to be insufficient for founding any useful seminary of learning. And therefore, we must infer that the testator intended that the profits should be applied in aid of some existing seminary. And we are inclined to the conclusion that he contemplated the *public* seminary of his own county

whenever established—there being, as we infer, none such at the date of his will. In England a devise *"to the poor"* has been frequently construed as meaning the poor of the testator's parish, because it was but reasonable to presume that the testator preferred the poor among his own neighbors and friends, rather than the paupers of other parishes with whom he had no peculiar sympathies, and whom it was the duty of others to sustain.

Like considerations would conduce, in some degree, to a similar deduction in this case. And even if the Trigg seminary could not claim the bounty as a matter of clear and exclusive right—nevertheless, we are of the opinion that the application of the fund to that seminary would effectuate the declared purpose of the testator more certainly and appropriately than any application that could be made of it to any other seminary of learning.

And therefore we conclude, that the Circuit Court ought to have decreed the appropriation of the profits of the devise to the use of the Trigg seminary and appointed a trustee to execute the trust; and consequently, erred in dismissing the bill.

Wherefore, the decree is reversed, and the cause remanded for a decree conformable with this opinion.