## Attorney General *vs* Wallace's Devisees.

### ERROR TO THE MASON CIRCUIT.

*Wills. Devises. Charities. Jurisdiction. Survivorship.*

JUDGE BRECK delivered the opinion of the Court.—Chief Justice Marshall did not sit in this case.

CHANCERY.

Case 151.

*October* 1.

The clause of the will of Thos. Wallace out of which the controversy arises.

THE will of Thomas Wallace, who died in the county of Fleming in 1840, having a large estate, contains the following provisions:

"I do hereby will and bequeath all my estate, real and personal, of every description and kind whatever, except the sums hereafter willed to other persons, to my beloved daughter, Amelia Sarah Wallace, on the terms and conditions hereafter named, viz: I will all my real estate, and two thirds of all my personal property of every description that I may own at my death, slaves excepted, to my beloved daughter Amelia, above named, to be entailed to her and her child or children, never to be at the disposal of any other person or persons during her natural life, nor at her own disposal, only that she will receive all the profits, rents, interest, hire and benefit accruing therefrom, for her use and support, during her natural life. The one third of all personal estate, with exception of slaves, to be at her, Amelia's, disposal, when she becomes of lawful age, but in the event of the death of my above named daughter, Amelia Sarah Wallace, without child or children, or should she not have any child alive at her death, or should her child or children die without issue, in either event, I do will and bequeath all, or the whole of my estate that my daughter may own at their death, without issue as above stated, to be disposed of on the following terms: One fourth to the children of my sister Rebecca Cummings, deceased, or their

ATTORNEY GEN-
ERAL
vs
WALLACE'S DEV. heirs; one fourth to the child of my sister Fanny McConnell, or her heirs; one fourth to Thomas and Mark Wallace, sons of brother David Wallace, or their heirs; *and the remaining fourth to such charitable and benevolent institutions as may appear to be most useful in disseminating the Gospel at home and abroad."*

The will bears date the 6th May, 1835. In a codicil

The codicil. thereto annexed, on the 9th January, 1836, there is the following clause: "I nominate and appoint my trusty friends hereafter named, trustees, with the necessary powers, to hold in trust for the use and benefit of all my heirs, or all the purposes and persons therein named, and dispose of it agreeably to the provisions of my will: Rev. Andrew Todd, John Chambers, of Washington county, William Hodge, of Mason, and John Andrews, of Sherburn Mills."

In June, 1841, the will was admitted to record in the Fleming County Court.

In the original will, William Hodge, John Andrews, and L. W. Andrews, were appointed executors, but they declined to qualify, and Thomas Porter was appointed administrator, with the will annexed.

The testator's daughter intermarried with F. A. Andrews, and died shortly after her father, without issue.

In December, 1843, this information, or bill in chan-
The bill, its allegations and object. cery, in the name of Owen G. Cates, Attorney General for the Commonwealth of Kentucky, by W. H. Cord, as relator, was exhibited in the Fleming Circuit Court, praying to have enforced and executed the charitable devise in the will. The bill alledges that the trustees had declined to act, and that no steps whatever had been taken for carrying out the devise. It also charges, that the personal estate of the testator had been squandered, and that a portion of the real estate was improperly and illegally held and claimed by Marshall and others, through the unauthorized and fraudulent acts of F. A. Andrews. The trustees, administrator, devisees and heirs, and others claiming portions of the estate, were made defendants.

The trustees in their answer, state they at first were not
Answer of defts. inclined to accept the trust, but subsequently, and be-

fore the exhibition of complainant's bill, three of them had determined to undertake its execution. That a bill had been filed by Dobbins and wife, in the Fleming Circuit Court, claiming a special legacy under the will, making the trustees defendants, and that they, or three of them had filed a cross answer, praying that the devise in charity might be enforced. Andrews, the other trustee, afterwards answered the bill of the Attorney General, and accepted the trust. The other defendants resisted the relief sought, and asserted as devisees, heirs and otherwise their respective claims to the estate.

During the progress of the cause, the Attorney General, upon the ground that the trustees were parties, and had answered in the suit of Dobbins and wife, claiming the devise in charity, and their right to administer it, directed, by his written order, this suit, or the suit prosecuted in his name, to be dismissed, but afterwards modified the order leaving the propriety of dismissing it in the discretion of the Judge.

The cause was subsequently removed to the Mason Circuit Court, when after various amendatory and cross pleadings, it was heard, and the complainant's bill dismissed, but without prejudice, and without costs.

To reverse that decree, the relator, in the name of the Attorney General, has brought the case to this Court.

Before we proceed to the examination of the merits, we will dispose of a question presented by the assignment of errors, growing out of the order changing the venue of the case.

The cause was removed from the Fleming to the Mason Circuit Court, upon the petition of John Wallace, one of the defendants. The order for removal was made by the Judge of the latter Court, to whom it was known, but the fact did not occur to him at the time, that Wallace resided in the county of Mason. The relator, upon that ground, in due time after the removal of the cause, moved the Court to send it to some other county. The Court offered to remand it to Fleming, but to this the relator objected, and thereupon the Court, upon the ground that he had no authority to send it elsewhere, overruled the motion, and we think correctly. The Court might,

*Margin notes:*

ATTORNEY GENERAL
vs
WALLACE'S DEV.

Decree of the Circuit Court.

When the venue in a cause has been changed to a county where one of the parties resides, the Court may remand, but cannot send it to any other county than that from which it was removed.

and ought upon motion, to have remanded the cause to Fleming, but had no authority, under the circumstances, to send it to any other county. The power of the Judge over the case, in virtue of the petition of Wallace, was exhausted when he had made the order for its removal to Mason. If that order was illegal or improper, he could only remand the cause. He had no authority to set aside or change the order. The statute provides that there shall not be more than one removal of the same cause, except under a particular state of case, which did not exist here. The improper removal of the cause to Mason, did not affect the jurisdiction of the Court; and as there was no motion by the relator to remand it, but an objection to that course, it seems to us that there was no error in regard to the venue, which can be rendered available.

In the further consideration of the case, it becomes important to enquire as to the validity of the devise sought to be enforced, and if valid, whether it can or ought to be enforced by this mode of proceeding.

It is insisted that the devise is void upon two grounds :

1st. That the will vested an absolute, unconditional fee simple estate in the daughter, and consequently that nothing remained to devise over.

2d. That if not void upon that ground, the devise is void for want of certainty.

The objection, in our opinion, is not available upon either ground.

Although the will is rather unskilfully drawn, and in some particulars somewhat ambiguous, yet there is little difficulty, we think, in ascertaining the testator's intention, the governing and controlling consideration in the construction of wills.

It is very evident he intended that his estate, with the exception of specific legacies and his slaves, should go to his daughter and her issue, if any, living at her death, and upon the failure of such issue, that it should go to the other persons and purposes named in the will. It is true he says he gives it to his daughter to be entailed upon her and her child or children, but that did not, as contended, constitute an estate tail. The law allowed him to secure it to his daughter and her child or children, or

issue living at her death, and upon the failure of such issue, otherwise to direct and control the disposition of it. This, we think, he designed to do and has done by his will, and it is by no means clear that he intended the devises over should take effect upon any other contingency than his daughter dying without issue living at the time.

The portion of the will upon which the devises over mainly depend, is as follows: "but in the event of the death of my above named daughter, Amelia Sarah Wallace, without child or children, or should she not have any child alive at her death, or should her child or children die without issue, in either event I do will and bequeath all or the whole of my estate that my daughter may own at their death, without issue as above stated, &c."

By the expression "in either event," the testator must have intended that there was more than one event or contingency, upon which the devises over were to take effect, what then were those contingencies? It is evident, we think, the first was the death of his daughter without having had a child or children. He certainly could not have intended the clause, "or should she not have any child alive at her death," *alone* to constitute a second contingency, for that would cut off the grand children of his daughter, if any, which cannot be presumed to have been his intention. That clause must, therefore, to ascertain a second contingency, be construed in connection with the one that follows, "or should her child or children die without issue." The first clause would seem to imply that his daughter might have a child or children, but who might not be alive at her death, and by the last clause, that such child or children should die without issue. *The dying without issue* then would be confined to the children of the daughter, who might die before and not be alive at her death. Upon any other construction, it seems difficult to give any consistent meaning to the clause, "or should she not have any child alive at her death." It would follow from this view, that it was the intention of the testator that although his daughter should have a child or children, yet if they should not be alive

at her death, and should die without issue, his estate was to go over as directed. If correct in this construction, it would also follow that there was virtually but one contingency upon which the devises over depended, and that was the death of the daughter without issue living at the time. That was a contingency which must happen, if at all, within a life in being. The daughter may be considered as taking an estate in fee, which was to terminate, however, and did terminate upon the happening of that contingency.

In this view the limitation over was good as an executory devise, according to the well settled doctrine both in England and this country: (*Fearne on Remainders*, 399;) *Hart* vs *Thompson's administrator and heirs*, (3 B. Monroe, 482,) and authorities there cited.

The testator de-
vised estate to
his daughter,
with a limitation
over to others if
she should die
without leaving
any child alive
at her death.—
Held that the
limitation was
good as an exe-
cutory devise:
(*Fearne on Rem.*
399; 3 B. Monroe
482, and author-
ities there cited.)
But if the devise
be to the daugh-
ter, and over in
case she die
leaving issue liv-
ing at her death,
provided they
should die with-
out issue, the last
would be void,
as too remote.
It might not hap-
pen during the
life of one in be-
ing, and 21 years
thereafter.

But if we are mistaken as to the intention of the testator in regard to what should constitute the second contingency, still we think the limitation over is good. We are satisfied that the will authorizes the construction that he intended his estate to go over should his daughter die without having had a child or children, or in other words, without issue living at her death. The devise to take effect upon that contingency, we have seen, is clearly good. But if he intended to provide that the devises over were still to take effect, although his daughter should die leaving children, provided they should die without issue, it is equally clear the devise upon that contingency, would be void. It might not happen within a life in being and twenty one years thereafter, and would be equivalent to an indefinite failure of issue. But the attempt to create a limitation upon a contingency, which the law did not allow, ought not to destroy or affect it, upon a previous contingency which the law does tolerate.

Whether the daughter should be considered as taking an estate for life only, or an estate in fee, defeasible upon a failure of issue at her death, upon either construction the devises over, we think, can be sustained. In the first instance, her issue, if any, living at her death, would take an estate in fee by implication under the will, as purchasers. In the second, the estate would pass in fee to such issue, if any, by descent; and in each instance,

upon the failure of such issue, the devises over would take effect. So that in any view of the case, the devises over are good.

The rule is well settled, that wills should be so construed as to carry out the testator's intention so far as may be consistent with the rules of law: and if the entire will, or all its provisions cannot be sustained, still to sustain and carry it out as far as may be practicable.

Having thus disposed of the first, we will now examine the second objection to the devise in question.

The object of the charity is "the dissemination of the gospel at home and abroad," and is deemed sufficiently certain and specific; gospel, according to the common and more general acceptation of the term, is synonymous with christianity or the christian religion. The general mode of accomplishing his benevolent purpose is pointed out by the testator. He desires it to be done through the instrumentality of "such charitable and benevolent institutions as *may appear* most useful and efficient for effecting the object. The particular mode of administering the charity or the selection of the institutions most useful for that purpose, it was the intention of the testator, we think, to leave in the discretion of his trustees. That this devise, as a devise in charity, is good and clearly within the statute of the 43d Elizabeth, C. 4, of charitable uses, (1 *Stat. Law*, 308,) according to the construction which has been given to it in England and America, there can, we apprehend, be no doubt. In *Gass & Banta* vs *Wilhite, &c.* (2 *Dana*, 170;) *Moore's heirs* vs *Moore's devisees and executors*, (4 *Dana*, 354,) and other cases, that statute has been held to be in force in Kentucky. The subject of charitable devises in view of it, and the jurisdiction and power of Courts of equity to enforce them, have been repeatedly and elaborately examined by the Chancellors in England and the most eminent jurists in this country. In *Story's Equity, chapter on charities*, 489, the whole subject is examined and all the authorities referred to. In *Moggeridge* vs *Thackwell*, (7 *Vesey*, 36,) all the authorities were examined by Lord Eldon. In that case the testatrix gave to James Vaston the residue of her estate. desiring him to dispose

ATTORNEY GENERAL
*vs*
WALLACE'S DEV.

Wills should be so construed as to carry out the intention of the testator so far as consistent with the rules of law. If all its provisions cannot be sustained, it should be carried into effect so far as it can be sustained.
A devise to be applied to the dissemination of the Gospel at home and abroad is valid, not void for uncertainty. The trustees should first decide the best mode of its appropriation.

ATTORNEY GEN-
ERAL
vs
WALLACE'S DEV.
of the same in such charities as he shall think fit, recom-
mending poor clergymen, &c.  The trustee died in the
life of the testatrix; the devise was, nevertheless, sus-
tained and administered under a *scheme*:  *Greive* vs *Case*,
(4 *Br. Ch. C.* 67,) bequest of money to support preach-
ers, held within the statute.  *Mills* vs *Farmer*, (1 *Me-
rivale*, 55,) a devise for promoting the gospel in foreign
parts and in England, sustained.  The subject has also
been elaborately examined by this Court, and more par-
ticularly in *Moore's heirs* vs *Moore's devisees*, *supra*. and
in *Curling's administrator, &c.* vs *Curling's heirs*, (8
*Dana*, 38.)

In the former case a devise for the education of poor
orphans for the county to be selected by the County
Court, was sustained.  In the latter, a devise for the use,
privilege and benefit of a public seminary, sustained,
and given to a seminary established in the county of the
testator's residence, after his death.

These authorities, with numerous others that might be
cited, fully sustain our conclusion that this devise is valid
under the statute of Elizabeth, and enforcible in a Court
of equity.

But it is objected that the Court below had no juris-
diction to enforce it by this mode of proceeding.

It is very evident from the authorities referred to, that
this would have been the appropriate remedy or mode of
proceeding in England, upon the failure of the trustees as
here alledged, to accept and execute the trust.

The proceeding by information or bill in chancery in
the name of the Attorney General, for establishing char-
ities, has been in practice in England for more than two
centuries, and the better opinion, in view of the authori-
ties, seems to be, that so far as the Court or Chancellor
acts *judicially* and not prerogatively as the representative
of the King, the practice commenced and owes its origin
to the statute of Elizabeth.  If then the proceeding rests
upon that statute, which is held to be law in Kentucky,
no sufficient reason is perceived why it should not be tol-
erated; and such was the opinion of this Court in *Cham-
bers* vs *Baptist Education Society*, (1 *B. Monroe*, 215.)
It is true that the duties of the Attorney General in Ken-

*If the trustees
fail to accept and
execute a charity
trust, the Chan.,
at the instance
of the Attorney
General, has ju-
risdiction to ap-
point a trustee,
and carry the de-
vise into effect,
in analogy to the
practice in Eng-
land for near
two centuries.*

tucky, are prescribed and regulated by law, and that it is not made his duty to file a bill like the one now before us.  But we cannot admit, as insisted, that because it is not made his duty to institute the proceeding, that therefore, it would be unauthorized or illegal.

It is merely as to the mode of proceeding that his name is used.  It imposes upon him no duty and he incurs thereby no responsibility.  It is a part of the proceeding that there must be a responsible relator, who is liable for costs and upon whom devolves the preparation and management of the cause.  And hence the Attorney General has no right to dismiss a suit of this kind, and more especially when commenced by his sanction.  He was, therefore, right in withdrawing or modifying his order for the dismissal of this suit, and leaving the disposition of it to the Chancellor.

Assuming then that the allegations in the bill were sufficient to give the Court below jurisdiction, the enquiry is, whether the decree is right in view of the facts of the case.

The will was admitted to record in June, 1841.  The complainant's bill was filed in December, 1843.  Process was served upon the trustees, Hodge and Andrews, in January and March, 1844.  The other trustees, Todd and Chambers, were proceeded against as non-residents.  Neither of them answered till April, 1845, when the answer of Hodge, Todd and Chambers was filed.  They state that they had at first been disinclined to accept the trust, and had so expressed themselves, but had afterwards concluded to accept it.  That in a suit brought by Dobbins and wife in the same Court, claiming a legacy under the will, they had been made defendants, and in a cross answer in that suit, had signified their acceptance of the trust and asserted their claim to the devise in charity.  That suit was commenced in August, 1843, but no process appears to have been served upon either of these trustees, and no answer filed by either of them until after the service of process in this case.  The other trustee, Andrews, seems not to have determined to unite in the execution of the trust, till about two years after this bill

ATTORNEY GEN-
ERAL
vs
WALLACE'S DEV.

was filed, when he filed his answer in this and also in the suit of Dobbins.

It appears that shortly before this suit was commenced, Hodge consulted counsel upon the subject of this devise, and indicated a disposition to undertake the trust reposed by the will. He was advised to ascertain whether the other trustees would unite with him. Todd, it seems, agreed to join in the execution of the trust; Chambers was disinclined, but consented to the use of his name; Andrews did not consent, so far as appears, till he filed his answer. This information was obtained by Hodge, and counsel employed to assert the claim of the trustees about the time this suit was instituted. Up to about that time, nearly three years after the probate of the will, they had all been disinclined to make an effort to enforce the devise, and no legal step had then been taken. Under such circumstances, we are very clearly of opinion, that there was good ground for filing this information. But as all the trustees have become willing to execute the trust, and claim the right to administer the charity, it is contended that the Chancellor was right in dismissing this proceeding, and leaving the trustees to assert their claims upon their cross bill in the case of Dobbins, and otherwise. On the other hand, it is insisted that the Chancellor should have proceeded in this suit to carry out the devise under a *scheme.*

According to our construction of the will, it was the intention of the testator to leave the administration of this fund in the discretion of his "trusty friends," the trustees. He designates the object, the spread of the Gospel, and suggests the accomplishment of it through the instrumentality of such benevolent institutions *as may appear*, as we think, to his trustees, most useful for that purpose. He moreover vests the trustees with the necessary powers to hold and *dispose* of his estate agreeably to the provisions of his will. A Court of equity in such a case, will not interfere, for the purpose merely of controlling the discretion of the trustees, and of administering the charity through a *scheme* to be devised by the Court. This would in effect be making a will for the testator. But in such cases the Court will only interfere

When there is a devise in charity, and the mode of its application left in the discretion of trustees appointed by the will, the Chancellor will not interfere merely to control the discretion of the trustees, and of administering the charity thro' a scheme of his own devising, unless there be some failure, abuse or evidence of incapacity to carry out the trust.

when there is some failure or incapacity on the part of the trustees to act, or where there has been some abuse of the trust.

In that case the Chancellor would, and by this mode of proceeding, interfere, and virtually assume and execute the trust in the place of the trustees. This doctrine, we think, is sustained by the authorities already cited.

But here the trustees are able, and now willing to act, and claim the right to administer the fund. It is true, they came to this determination after a delay rather unreasonable. Still we are of opinion they should be permitted to execute the trust. But as there was sufficient ground at the time for instituting this proceeding, as two of the trustees are non-residents, and became so since the date of the will, and probably since the death of the testator—as a third is insolvent, and probably became so since the testator's death, in view of these facts, and also of the previous indifference, neglect and unwillingness of the trustees to accept the trust, we think the Court should have retained the cause, and have ruled them to assign or report a plan or *scheme* for administering the fund, not for the purpose of controlling their discretion, unless in flagrant violation of the object and design of the testator, but with a view to the due and speedy execution of the trust. Upon the failure of the trustees so to report, and to proceed in good faith to execute the trust, the Court should enforce it by a *scheme*.

As to the controversy with Marshall, in regard to the Roper property, the complainant's bill should be dismissed without prejudice, that the trustees may, by separate proceedings, assert their claim in reference to it. Other matters of controversy that may arise in regard to the estate of the testator, should not be brought into this cause, except in case of failure, neglect or abuse of the trust on the part of the trustees, the object of retaining it being to secure a due execution of the trust under the supervision of the Court. And for this purpose, the Court will have power, from time to time, to make all necessary and appropriate orders. The trustees will proceed upon their cross bill, in the case of Dobbins, and

—In which case the Chancellor will assume the execution of the trust in the place of the trustees.

But where the trustees unreasonably delayed the commencement of the duty of carrying out the trust, and a bill was filed.—Held that though the trustees, by their answer expressed their willingness and intention to enter upon and carry out the trust, that it was proper for the Chancellor to retain control of the case, and require the trustees to report a scheme of carrying out the devise, that the devise might be affectuated speedily, and in accordance with the intent of the testator.

ATTORNEY GEN-
ERAL
vs
WALLACE'S DEV.

otherwise as may be necessary to assert their claim, and obtain possession of the devised estate.

The Court should provide for the payment of all costs necessarily incurred by the relator in this proceeding, and also a reasonable compensation for his services, to be paid by the trustees out of the trust fund.

As the question may also arise as to the power of the trustees to convert the real estate, to which they may be entitled under the devise, into money, it may be proper here to remark, that we think they have the power, under the will, and under the supervision of the Chancellor, should exercise it with a view to carrying out more effectually the designs of the testator.

When real estate is devised to be appropriated to a charitable use, the trustees, whose duty it is to carry out the devise, have the power to sell, that also includes the power to compromise contests which threaten to be protracted and expensive, under the sanction of the Chancellor.

It seems that propositions for a compromise of the numerous controversies between the trustees, devisees, heirs, and others claiming the estate, for the purpose of preventing expensive, and protracted litigation, have been suggested, and a desire has been expressed that this Court should indicate an opinion as to the power of the trustees in that respect. We can only say, that having, as we think, the power to sell, they might also under the sanction of the Court, amicably adjust their claims in regard to this devise, by a compromise.

As all the parties are before the Court, it may be also proper to dispose of another question, arising upon the construction of the will.

The devise over of one fourth of the testator's estate, subject, &c. to Thomas and Mark Wallace, was afterwards by a codicil, annulled and revoked; and that fourth devised to Fanny Cummings, Edward Cummings, and a *certain female Fanny*, to be equally divided between them. In a subsequent codicil, the testator revoked so much of this devise as gave Edward Cummings one third of the one fourth, and did not otherwise in express terms dispose of it. The question is, whether upon the revocation of the devise to Edward Cummings, that interest survived to Fanny Cummings and the certain female Fanny, or whether as to *that* the testator died intestate. As the devise of the one fourth to Fanny and Edward Cummings and *the female Fanny* was to be equally divided between them, it was a devise to them

When a devise is made to two or more as tenants in common, and one die, or there be a revocation as to one, the share of such one will not survive.

as tenants in common, and not as joint tenants, and in such cases the rule is, that upon the death of one of the devisees before the testator, or the revocation as to one, the share of that one, will not survive to the other: *Creswell* vs *Cheslyn*, (2 *Eden.* 123; 2 *Williams on Executors*, 763.) It results, therefore, that as to the one twelfth of his estate, after the payment of debts and pecuniary legacies, the testator died intestate.

Wherefore, the decree is reversed and the cause remanded, with directions to dismiss the complainants bill as to M. P. Marshall, without prejudice, and for further and appropriate proceedings consistent with this opinion.

*Cord and Hord* for plaintiff; *Robertson, Harlan, T. Y. Payne, Boyd, McClung and Taylor* for defendants.