CARREL, AUDITOR, ET AL. v. THE STATE, EX REL.
BROWN ET AL., DIRECTORS OF THE
UNIVERSITY OF CINCINNATI.

*University of Cincinnati — Trust funds — Discretion of directors or trustees — Not subject to review by courts, when — Compensation to professors and instructors — Entering military service of United States — Mandamus.*

1. The directors of the University of Cincinnati have the discretionary power under the wills of Charles McMicken and Matthew Thoms to pay, from the trust funds thereby given, to professors and instructors of the university who entered the military service of the United States in the war with Germany, such amounts as would make up the difference between their regular salaries and the compensation paid by the government.

2. Gifts in trust for the purposes of education are within the rules governing charitable trusts and are liberally construed.

3. Courts will not interfere with or control the discretionary application of funds by trustees in such a trust except to prevent abuse or misuse. Such question is not properly raised in an action in mandamus.

4. The propriety of expenditures to carry on a university must be determined in view of the facts and conditions that exist at the time.

(Decided June 30, 1919.)

ERROR: Court of Appeals for Hamilton county.

*Mr. D. J. Ryan* and *Mr. Oliver M. Dock,* assistant city solicitors, for plaintiffs in error.

*Mr. Rufus B. Smith; Mr. O. J. Renner* and *Mr. Sanford Brown,* for defendant in error.

SHOHL, P. J. On April 30, 1917, shortly after the declaration by the United States of a state of war against the imperial German government, the directors of the University of Cincinnati adopted

the following resolution, which was communicated to all the professors, instructors, officers and other employes of the university:

"Resolved, That all professors, instructors, officers and other employees of the University who enlist or are drafted in the army, navy, medical or hospital service of the United States or in recognized training camps of the United States who are now permanently employed for next year be assured that their positions will be held for them, and that they will receive compensation out of trust funds under our control at regular times in such amount as will make up the difference between the army, navy, hospital or other service pay and their regular salaries in this institution."

At that time a substantial number of professors and instructors had already entered the military service and others were about to do so. A list of the names, with the amount of compensation due each of the members of the teaching force under the resolution, was certified in 1918 by the directors of the university to the Civil Service Commission and by it transmitted to the auditor of Cincinnati. Under the direction of an examiner in the office of the auditor of state, the city auditor refused to draw his warrant on the treasurer to make the payments called for by the list unless ordered to do so by the courts. The directors of the university thereupon brought this action in mandamus against the auditor and treasurer of Cincinnati, and the court of common pleas, after a trial, rendered judgment against the defendants and ordered a peremptory writ of mandamus to issue, directing the drawing and the payment of the war-

rant. The city auditor and city treasurer prosecute error to this court.

The refusal of the city officials to pay the professors and instructors is based upon the contention that it constitutes a payment of public money as a gratuity or donation, and that the board of directors is exceeding its powers in attempting to use funds for such purpose. They cite *State, ex rel. Barker,* v. *Philbrick,* 13 O. D., 158, and *Steubenville* v. *Culp,* 38 Ohio St., 18. In the first case certain sanitary employes were laid off temporarily, and in the latter case a police officer was suspended from duty. In both cases it was adjudged that no compensation could be recovered by the complainants as they were not rendering services to the city. In the case at bar, however, the resolution does not call for the payment out of money received from taxation. The disbursements are to be from trust funds. The record establishes that in addition to the funds raised by taxation, the board has an income from certain trust funds, among which are the McMicken fund and the Thoms fund.

Under the will of Charles McMicken a large amount of property was left for the purpose of establishing a college or university. Items 21 and 37 provide:

"Item XXI: I therefore devise, and bequeath to the City of Cincinnati and its successors for the purpose of building, establishing and maintaining, as soon as practicable after my decease, two colleges for the education of white boys and girls, all the following real and personal estate in trust forever."

"Item XXXVII: The establishment of the regulations necessary to carry out the objects of my endowment, I leave to the wisdom and discretion of the corporate authorities of the City of Cincinnati, who shall have power to appoint directors of said institution."

The income from the .McMicken estate thus devised amounts approximately to $28,000 annually.

Matthew Thoms, after certain other bequests, left the rest, residue and remainder of his estate as follows:

"Item III. All the rest, residue and remainder of my estate, real and personal, wheresoever situate, of which I may die seized, I give and devise to the City of Cincinnati, in trust for the University of Cincinnati, upon condition that out of the same there be set apart and provided a sufficient sum as the endowment of a professorship, to be called in memory of my father 'The William Thoms Professorship,' and the residue, if any, of the property given, shall be applied to such uses and purposes of said university as the directors thereof may from time to time provide."

The income from the Thoms estate, in excess of the amount required for the William Thoms professorship, amounts to approximately $6,000 annually.

All the powers granted by these bequests are vested in the board of directors, under Sections 7902 and 7915 of the General Code. Under the wills the disbursement of the money is left to the wisdom and discretion of the board, in the one case; and, in the other, it is to be applied to such uses as the directors may provide. The directors

justify the expenditure in accordance with the resolution on the ground that in a proper aspect and under a broad view it promotes the purposes and objects of the donors and tends to further the success of the University of Cincinnati. If so, it comes within the discretionary powers granted to them.

The vital force of a university is its teaching body. No matter how fine the buildings, equipment and appointments devoted to the university purposes may be, the ultimate achievement of the university is accomplished by its staff of teachers. The establishment of a staff of professors in a university and the welding of all into a unit is a slow growth. The number of teachers who are the most competent and desirable is necessarily limited. In securing professors and instructors, and in retaining them, the University of Cincinnati comes into competition with the other institutions of learning throughout the country.

The uncontradicted evidence shows that the policy of paying the professors and instructors of universities, who entered the war service of the United States, the difference between the amount paid them at the university and the amount received from the government has been so generally followed in the universities and other institutions of learning that it may fairly be said to be the generally accepted policy in the country. While the professors and instructors had no contractual obligation to resume their positions after the war, it was hoped that they would do so, and the directors knew that the continuing payments would operate in fact to bind them to the university. The action

of the directors in adopting the resolution was taken because in the judgment of the directors it was advisable to maintain the reputation of the university in the educational world and thus make it an institution which would attract to its faculty men of high standing, to make certain the continuance with the university after the war of the services of those professors and instructors who had enlisted for the war, and to continue the good will of the citizens of Cincinnati who had from time to time made gifts to the institution. Had the university declined to follow the accepted and prevailing policy, there might well have been a feeling among the members of the teaching body that the university was lacking in appreciation of its members, as well as in patriotism for the country, and it might have impaired the standing and reputation of the university with the teachers whom it sought to attract.

The trusts under the will mentioned, being given for the purpose of education, are within the rules governing charitable trusts. *Zanesville Canal & Mfg. Co.* v. *Zanesville,* 20 Ohio, 483, 488; *Russell* v. *Allen,* 107 U. S., 163, 172; 2 Perry on Trusts, Section 700; *Dexter* v. *President and Fellows of Harvard College,* 176 Mass., 192, and *Rockwell et al.* v. *Blaney et al.,* 9 N. P., N. S., 495, *et cit.*

Courts are liberal in the construction of powers of trustees of charitable trusts. *Zanesville Canal & Mfg. Co.* v. *Zanesville, supra; Mills* v. *Newberry et al.,* 112 Ill., 123; *Ingraham* v. *Ingraham et al.,* 169 Ill., 432, 450, and 3 Story Equity (14 ed.), Section 1550.

While courts in proper proceedings will restrain trustees from dealing with trust funds in a manner not authorized by law, they will not interfere with the discretion of the trustees in a charitable trust and will not control their discretionary application of the funds except to prevent abuse or misuse. 2 Perry on Trusts, Section 511; *Attorney-General* v. *Moore,* 19 N. J. Eq., 503, 507, and *Attorney-General* v. *Wallace,* 46 Ky., 611, 620.    See also *Hunt, Trustee,* v. *Edgerton et al.,* 9 C. C., N. S., 353, affirmed 75 Ohio St., 594.

Moreover, an action in mandamus does not raise such questions.   See *Brannon* v. *Board of Education,* 99 Ohio St., 369, and *State, ex rel. Clarke,* v. *Board of Education, ante,* 146.

Just what expenditures are suitable and necessary to carry on a university must be determined in view of the facts and conditions that exist at the time.   (*Cincinnati* v. *Jones et al.,* 28 C. C., 210.) Under the circumstances it can not be said that the money in question was not devoted to the uses and purposes of the university.   The resolution was designed to promote the objects of the donors of the trust funds, and the payments therein provided for should be made.

*Judgment affirmed.*

HAMILTON and CUSHING, JJ., concur.