CASE 79—WILL CASE—MAY 20.

## Sanders, Administrator, Etc. v. Babbitt, Etc,

### APPEAL FROM BULLITT CIRCUIT COURT.

WILL—REVOCATION.—A will is revoked where the testator causes his name and those of the attesting witnesses to be cut from it with the intent to revoke it; and the retention of the mutilated

instrument with alterations in the testator's handwriting does not revive it.

J. W. CROAN FOR THE APPELLANTS.

> The will of G. N. Sanders was not revoked because the intention to revoke was lacking. Ky. Stats., ch. Wills; Neville Beauchamp's Will, 4 Mon., 363; Williams on Executors, p. 66, and authorities cited; Kent's Com., vol. 4, 629 (Comstock's ed.). And the intention to revoke is a question of fact. 5 Bush, 337; Tudor v. Tudor, 17 B. M., 389.

CHARLES CARROLL FOR THE APPELLEES.

1. The will of Sanders was revoked and was never revived. Ky. Stats., sec. 4833; 5 Bush, 337; Tinker v. Ringo's Exr., 11 Ky. Law Rep., 120-1.
2. It would be unfair to the appellees that the costs of the appeal should be paid out of the estate if the judgment should be affirmed.

J. W. CROAN FOR THE APPELLANTS IN A PETITION FOR A REHEARING.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment of the Bullitt Circuit Court refusing to probate a certain paper as the last will of G. N. Sanders.

The facts in reference to the execution of the paper are as follows: In December, 1892, decedent, G. N. Sanders, had one of his neighbors, Mr. Gilmore, write his will at his dictation, which Sanders subsequently signed in the presence of S. D. Brooks and Wilson Summers, who attested same at his instance and request; and this will was delivered by Sanders to Summers, to be kept until his (Sanders') death.   Some two years later, Sanders took the will out of the possession of Summers, saying that he wished to make some change in it.   Shortly afterwards he again sent for Gilmore, and notified him of his purpose to change the will; and, after some talk as to the best way to do it, Sanders directed Gilmore to cut his name

and that of the subscribing witnesses from the paper, leaving the will above it unchanged; and then Gilmore, in the presence of Sanders, and by his direction, made several additional bequests to certain of his children, and the paper was then delivered to Sanders, who said that he would have it attested. After the death of Sanders, which occurred within less than a year from this time, this will was found among his papers, signed in his proper handwriting, but not attested; and, in addition to the additions made to the will by Gilmore, the fourth clause had been changed by erasing so much of same as devised $300 in cash to his daughter, Mrs. Roy, and deceased, in explaining the reason for this change, in his own handwriting interlined the will, adding these words: "The reason I cross out the above is that Theresa Roy has but one child, and he is a young man with a complete education, and Steve Sanders has three boys; and I gave Theresa Roy $500 in cash, and nine acres of land, which she sold for $300 cash, and for which I paid $712 for the same land."

He never called upon his neighbors to attest the will after the addition had been put to it, and, upon the offer to probate it, the court rejected the will on the ground that the cutting off the name of testator and the subscribing witnesses therefrom by testator's direction, and in his presence, was a revocation thereof; and, the paper never having thereafter been re-executed as required by law, it was adjudged that it was not entitled to be probated as the last will of decedent.

We are asked, upon this appeal, to probate that part of the will which remained after the signatures of testator and the attesting witnesses were cut off, upon the ground that the cutting of these signatures from the will

by direction of testator was not done with the intent to revoke the will, and that the addition should only be treated as a codicil.

Section 4833 of the Kentucky Statutes provides that "No will, or codicil, or any part thereof, shall be revoked unless under the preceding section, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same and executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence, and by his direction, cutting, tearing, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke."

This provision of our statute is a substantial re-enactment of the English statute of frauds (St. 29 Car. II. c. 3, sec. 6), and of the wills act of Victoria (St. 1 Vict., c. 26, sec. 20); and in construing the latter in the case of Clarke v. Scripps, 2 Rob., 567, the court said: "It is to be observed that the 'burning, tearing or otherwise destroying' the instrument must be done with the intention to revoke. It is not the mere manual operation of tearing the instrument or the act of throwing it in the fire, or of destroying it by other means, which will satisfy the requisites of the law. The act must be accompanied with the intention of revoking. There must be the animus as well as the act. Both must concur in order to constitute a legal revocation."

And in Giles v. Warren, L. R. 2, Prob. & Div., 401, a testator, under the false impression that his will was invalid, tore it up. Immediately afterward, on reconsideration, he collected the pieces, and placed them together among his papers of importance, and preserved them until his death. It was held that, as the act done was not accompanied by an intention to revoke a valid will, it was

ineffectual; and the will was admitted to probate. Lord Penzance said: "The fact that a testator tears or destroys his will is not itself sufficient to revoke one properly executed; that is to say, the bare fact. If, for instance, he tears it, imagining it to be some other document, there would be no revocation, for there would be no intention of revocation. He must intend by the act to revoke something that he had previously done. There can be no intention to revoke a will, if a person destroys the paper under the idea, whether right or wrong, that it is not a valid will. Revocation is a term applicable to the case of a person canceling or destroying a document which he had before legally made. He does not revoke it if he does not treat it as being valid at the time when he sets about to destroy it. According to the evidence, the testator, in consequence of some conversation he had, was under the impression that he had made no valid will, and, as being useless, he tore the document up and threw it on the fire. That is no revocation."

In the case of Doe v. Harris, 6 Adol. & E., 209, it was said:

"There can be no doubt that, if the name of the testator had been burnt or torn out, the revocation would have been as complete as if the will had been torn in twenty pieces. If this were not the case, it would lead to many absurd consequences."

Sir H. Jenner, in Hobbs v. Knight, 1 Curt., 779, said:

"The question, then, comes to this: Whether this be or be not a destruction of the will, I consider the name of the testator to be essential to the existence of a will, and that, if that name be removed, the essential part of the will is removed, and the will destroyed."

In Semmes v. Semmes, 7 Har. & J., 388, it was held that:

"A will deliberately canceled without accident or mistake is revoked, though the testator afterwards intended to make a new will, but omits to do so."

In Youse v. Forman, 5 Bush, 337, it is said:

"If the testator cut or tore off the signature to this paper [his will], the law presumes it to have been done with the intent to revoke, but this intent may be fortified or rebutted by extrinsic evidence."

It is apparent that the controlling fact to be ascertained in passing upon the question of revocation is, what was the intention of deceased in having the signatures of himself and the attesting witnesses clipped from the paper? The signature is certainly an essential part of the will. Without it there can be no will, and, if it was the purpose of deceased to revoke his will, no more effectual means of doing so could have been resorted to, short of the total destruction of the paper. The evidence of such intention is fortified by the fact that, in addition to cutting off the signatures, he made a number of important and material changes in the disposition of his property, both by adding other clauses, and by erasing provisions previously inserted. It is certain that the paper sought to be probated is essentially different from that from which the signatures were clipped, and this is in itself persuasive of the intention of deceased to revoke the other; and that he thought the old will was revoked is conclusively shown by the fact that he informed the draftsman, after the additions had been made, that he would have the new document properly attested when the witnesses came out. After a careful consideration of all the facts and circumstances connected with the mutilation of the old will, we are of the opinion that it was done by deceased with the intention of revoking it, and, as the new will has never been re-

vived by a re-execution thereof as provided by law, it was properly rejected as the last will and testament of decedent. For reasons indicated, the judgment is .affirmed.

JUDGE PAYNTER DISSENTING.

WHOLE COURT SITTING EXCEPT JUDGE DuRELLE.