JUDGE PRYOR
delivered the opinion oe the court.
Much of the testimony introduced in this case has no bearing upon the issues involved, and was certainly calculated to mislead the jury. The loss that Shippen, the husband of one of the devisees, sustained by reason of the sale of lumber to Laiville shed no light upon either the question of mental capacity or undue influence.
Stokes sold the lumber as the agent of the son-in-law, and the purchaser becoming embarrassed, made an effort by instituting legal proceedings to recover the debt, and for this reason and for no other it is maintained that Stokes conveyed to Shippen the Mound City property. There is no connection shown between the transactions, and the effort below was to make it appear that Shippen had lost more money by following the advice of his father-in-law, or permitting the latter to control his property as agent, than any compensation he, Ship-pen, had derived by way of advancement. In other words, it is claimed that no advancement was made, but the property was given as a compensation for the losses Shippen sustained on account of Stokes.
All this is relied on to establish that the devisor, Stokes, the father-in-law, had no sufficient reason for giving to his daughter, Mrs. Shippen, less than to the rest of the children. It should have been excluded, as the effect of such testimony was to induce the jury to conclude, when reviewing the history of the business transactions of the two parties, that the reasons assigned by Stokes were not such as authorized him to lessen the distributive share of the daughter in the final distribution of his estate; and that Stokes, being instrumental in causing his son-in-law to embark in the Mound City enterprise, resulting in loss to both parties, and, not being as vigilant as he should have been in the transaction with Laiville, should, as an act of justice, have indemnified him by making a proper devise to his wife, or in not requiring him to account *183 for the Mound City property or its value. Such character of testimony would defeat the right, in almost every instance, to dispose of one’s property by last will and testament. What was just and reasonable under the circumstances should have been left to Stokes, and not to the jury.
The evidence in regard to the management of the manufacturing establishment at Mound City, and that Stokes induced Shippen to go there, as well as in regard to the lumber transaction, should not have gone to the jury. That Shippen and the testator were friendly, and the value of the profits given him by Stokes, were circumstances proper for the jury to consider in determining the question of mental capacity or undue influence. Nor is the fact that a valuation was placed upon the property, speculative in its character, sufficient to show an imbecile mind. It might, as a slight circumstance when connected with other facts, conduce to show a want of capacity. Whether such facts exist in this case or not is unnecessary to be determined, as the case must go back to be again tried.
Instruction No. 2, given by the court at the instance of the contestant, was error. The facts of this case show the danger resulting from selecting a single fact or circumstance out of a large mass of testimony, and presenting it more prominently to'the jury than any other feature of the case.
The jury was told, "If the jury believe that there is gross inequality in the distribution of the estate of W. H. Stokes by the paper A (the will), and that no reason therefor exists, they may consider that fact in connection with-all the other facts and circumstances proven in the cause in determining whether said paper is in fact the true last will and testament of W. H. Stokes.”
We are aware that this court has heretofore decided that in some cases it may be necessary to call the attention of the jury to some particular fact proven in a case in order that *184 they may properly consider it. As for instance, in an action by A upon an account for goods sold B, when the plea of payment is interposed, the jury would be told that the holding the note of A by B, executed to him after the account fell due, and not showing for what it was executed, evidences a settlement, although not conclusive, between the parties. More importance really is to be attached to this character of proof than any ordinarily introduced upon such an issue. In the present case, upon an issue involving the right of one to dispose of his own property as he pleases, why the necessity of singling out the fact of gross inequality, if it exists, and telling the jury that this is to be considered with the other facts in determining the question of mental capacity? A juror of ordinary intelligence will know that all the evidence introduced upon the issue and‘heard by the jury without objection or by the permission of the court, is to be considered, and it is only in cases where the law attaches more importance to one fact or circumstance than another that he requires to be enlightened. Why not say to the jury that the fact of Mrs. Shippen being a favorite child is to be considered by them in making up their verdict, or that the hostile feeling of the devisor toward her husband may be also considered? All these, were circumstances properly before the jury; but when the court selects one from among the rest it gives that fact an undue importance with the jury, and makes a single fact, in the case, when applying to it a mere abstract proposition of law, the most material part of the controversy. The juror is never reluctant to seize upon such circumstances to aid him in arriving at what he conceives to be a true verdict; and when the court invites him to the consideration of such a fact by an instruction, all the other facts in the case are made subordinate to it.
We do not propose to discuss the facts of this case in order to show the danger arising from such an instruction, and *185 while precedents may be found in this, court, at least in MS. opinions, sanctioning in effect such an exposition of the law, it was under a different rule of practice, this court being then judges of both law and fact; and whether so or not, we are satisfied the ends of justice require that such precedents shall be no longer followed. The fact can go to the jury, but no instruction should be based upon it.
The judgment is reversed, and cause remanded, with directions to award a new trial, and for further proceedings consistent with this opinion.