CASE 126—ORDINARY—NOVEMBER 21, 1881.

# Flood, &c., v. Pragoff, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The attestation of the subscribing witnesses to a will is to the genuineness of the testator's signature, and not as to the contents of the paper. It is not necessary that they should know that the paper is a will.

2. When a paper is presented for probate, and it appears upon its face to be a will or codicil in regular form, without marks of alteration or other suspicious indications, the presumption is that the writing was on it when it was signed, and the testator knew its contents. The burden of proof is upon the contestants to show fraud, incapacity, or undue influence.

3. The date of the execution of a will or codicil may be shown by the writing itself or by extraneous proof. The statute requiring that the signature of the testator be placed at the "end or close thereof" is complied with, although it precedes the date.

4. The object of the exceptions to the rule admitting parties in interest to testify is to place both the parties upon an equal footing. In a contest as to the probate of a will, a devisee is a competent witness as to transactions between himself and the testator, all the claimants under the will being entitled to the same privilege.

5. The instructions objected to are error; but as they neutralize each other, they do not prejudice appellants.

E. E. McKAY, LANE & HARRISON, AND W. LINDSAY FOR APPELLANTS.

1. A subscription means a writing and a signature at its end. Both must be proved to comply with the statutory term "subscription."

2. The paper in contest being a codicil purporting to affect other wills, its date was of the essence of the paper.

3. It was error to admit Pragoff to testify against infants.

4. The proof offered by the propounders was insufficient to authorize the probate.

5. Instruction "C" should not have been given. It is in contradiction of the instruction number three given on appellant's motion. (Gen. Stat., 832, sec. 5; Ib., 247, sec. 26, chap. 21; 1 Duv., 126; Jones v. Jones, 1 Met., 268; Griffith v Griffith, 5 B. M., 573; 3 Am. Law Reg., O. S., 537; 1 Law Rep., 64; 30 Law of Prop., 55; 32 Ib., 200; Jar. on Wills, 251; 6 Penn. St. Rep., 409; 2 Brad. N. Y., 244; 13 Jurist, 289; 3 Curtis, 754; 1 Ib., 513; Beall v. Cunningham, 3 B. Mon., 338; Alexander v. Waller, 6 Bush, 341; Civil Code, sec. 606; Armstrong v. Armstrong, 14 B. M., 338; 24 Georgia, 328; 6 Eades'

Rep., 417; 2 Graves' Ch'y Rep., 549; 2 Redfield on Wills, 220; 1 B. Mon., 117; Upchurch v. Upchurch, 16 B. Mon., 112; 5 B. M., 511; 2 Wharton on Evidence, 888; 4 Met., 167; 26 Barb., 253; 23 N. Y., 394; Broaddus v. Broaddus, 9 Bush; 1 Duv., 131.)

GOODLOE, ROBERTS & HUMPHREY AND BARRET & BROWN FOR APPELLEES.

1. It is not necessary that a testator should acquaint the witnesses to a will or codicil with the fact of the contents thereof.
2. A will is sufficiently signed and executed without a date as with it.
3. Pragoff was a competent witness.
4. There was no error in the instructions for appellees. (7 Bingham, 457; 6 Ib., 311; 1 Cromp. & Mceson, 140; 1 Bac. Ab., 502; 10 Met., (Mass.), 166; 11 Cushing, 532; 16 Gray, 93; 34 Ind., 375; 36 Ib., 136; Ray v. Walton, 2 Mar., 74; Swift v. Viley, 1 B. Mon., 117; Miles' Will, 4 Dana, 1; 27 La. Annual, 271; Soward v. Soward, 1 Duv., 127; Jones v. Jones, 3 Met., 269; Bigelow on Fraud, 270, 127, 122; 10 Bush, 299; Wharton on Evidence, sec. 482.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Richard J. Usher, in 1873, executed a will, dividing his property between the parties to this action, none of whom are related to him, and in 1877 he executed a codicil revoking all devises to appellants, and died within about two years thereafter. The will was admitted to probate without objection, but the probate of the codicil was opposed by appellants on the ground of incapacity and undue influence, and from a verdict and judgment against them they appeal.

The codicil reads as follows:

"I, Richard J. Usher, of Louisville, Ky., do make this my codicil, confirming my last will, and do hereby revoke all clauses in said will or previous codicil bequeathing or leaving any thing to Michael Flood, or any of his children or connections.                RICHARD J. USHER.

"GEORGE HOWARD,

"HENRY DEPPEN, JR.

"LOUISVILLE, KY., April 3d, 1877."

Flood, &c., v. Pragoff, &c.

The testimony of the subscribing witnesses, Howard and Deppen, is to the effect that they were called upon, in the office of Pragoff, one of the devisees, to witness the signature of Richard J. Usher to the paper offered as a codicil, and that each of them, at the request of Usher, signed the paper in his presence, and in the presence of Pragoff, Usher having signed his name in their presence previous thereto, and that neither of the deponents saw any writing above the signature of Usher, and that they did not know what preceded the signature, whether it was a will or not, because they say that whatever writing, if any, there may have been, was concealed by the paper being folded down over it, or by reason of its being concealed by a blotter. The subscribing witnesses further state that Usher was of sound mind at the time they subscribed the will.   The testimony of Pragoff is that he wrote the codicil at the request of Usher, and that the paper presented is the one signed in his presence by Usher and the attesting witnesses; and was by the witness, after execution, handed to the testator.

Upon the record the following inquiries arise, the consideration of which will sufficiently indicate the objections of counsel for appellants to the ruling of the court below:

*First.* Is it necessary for a testator to acquaint the witnesses to his will or codicil with the fact that it is a will or codicil?

*Second.* What is a sufficient signing of a will?

*Third.* Who are competent to testify on an application to probate a will?

*Fourth.* Are the instructions given a correct exposition of the law?

In reference to the first and second inquiries, it is proper to consider the following provisions of the General Statutes:

"No will shall be valid unless it is in writing, with the name of the testator *subscribed thereto by himself, or by some other person in his presence, and by his direction;* and moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator." (Sec. 5, chap. 113.)

"When the law requires any writing to be signed by a party thereto, it shall not be deemed to be signed unless the signature be subscribed at the end or close of such writing." (Sec. 26, chap 21.)

As to the attestation, the statute appears to have been literally complied with, but it is contended for appellants that a literal compliance is not enough; that there arises, by necessary implication from the language used, a further requisite to a valid execution, and that is that the subscribing witnesses must know that they are subscribing the will of the person whose signature they attest, or they must be informed by him that it is his will which they subscribe. This, we think, is not required. The legislature has prescribed such formalities as it deemed proper, and we ought not to add to these formalities by construction, especially when the efficacy of the constructive requirement depends solely upon the memory of the subscribing witness. After any considerable lapse of time, the witness who could remember the circumstances connected with his subscription to the paper, so as to be able to state that the person, whose signature he was called to attest, declared that the paper signed was a will, might justly be subjected to the

suspicion of fabrication, one of the principal things against which the formalities specifically prescribed were designed to guard. It would be as reasonable to suppose that the legislature intended to require that the subscribing witness should know that the paper was a will by reading it or by having it read to him, something that this court has repeatedly held not essential. (Higdon's Will, 6 J. J. M., 445.)

These rulings show the understanding of the court to be that the attestation is of the genuineness of the signature of the testator, and not of the contents of the paper. If, then, the witness is not required to know the contents of the paper, which could only be known to him by such inspection, what beneficial end is attained by requiring him to state that the testator declared the writing to be his will, or that the signature attested is to his will? But it is insisted that the paper may have been blank, and the writing above the signature thereafter made, in which case there would not be a compliance with the requirements of the statute. Such might be the case as well when the declaration is made that the paper contains a will as when there was no such declaration; for it is not to be supposed that the paper was blank, for in that case the signing would be meaningless, unless the person whose signature is attested contemplates a fraud, which could as well be accomplished by a declaration that there was writing on the paper above the signature, and that the writing was a will. The person making the paper being of sound mind, it is not to be presumed that he is doing a vain or foolish thing in requiring the attestation, or that he contemplates a fraud, so that when the paper is presented for probate, and it appears upon its face to be a will or codicil in regular form, without any marks of alteration or other suspicious indications, the presumption

is that the writing was on the paper when signed, and that the testator knew its contents. In such case the burthen is on the contestants to show fraud, incapacity, or undue influence. In fact, it is not ordinarily necessary that the propounders should show, as they did by the attesting witnesses, that the testator was of sound mind, provided the statutory requirements were complied with, and there is nothing in the paper when presented which is irrational or inconsistent. Then the burthen shifts to the contestants. (Milton v. Hunter. 13 Bush, 163.)

It is insisted, however, that the presumption of capacity and volition in the execution of the paper is destroyed by the fact that it appears to have been written by one who derives a benefit from its provisions. Conceding this to be the correct rule, its only effect was to require the propounders to show volition and capacity, which was sufficiently done. (Bigelow on Fraud, page 127.)

As to whether the subscribing witness must know that the paper signed by him is a will, or whether it must be so declared to be by the testator, has never arisen in this State; but in other States and under similar statutes it has been held that neither is necessary, and that it is not required that the witnesses should see any writing on the paper.

In the case of Osborne v. Cook, 11 Cushing, 532, when the testator did not declare the paper to be a will, and neither of the attesting witnesses knew or suspected the nature of the instrument, the attestation was held sufficient. (Ela, &c., v. Edwards, 16 Gray, 92.) It is true that in these cases the wills admitted to probate were olographic; but this fact was referred to in the opinions for the purpose only of showing that the testator knew that he was making

a will, a fact that is satisfactorily shown in this case by other evidence.

In the case of Brown v. McAlister, 34 Indiana, 375, the will was written by another than the testatrix, and while the paper was so folded as to conceal the writing, the witnesses, at the request of the testatrix, subscribed their names without knowing the character of the writing, and there was no declaration by the testatrix or any one else as to whether there was any writing on the paper other than the signature of the testatrix, and no statement as to the object in requesting the witnesses to attest the signature. It was held that the statutory requirements had been complied with.

Such also are the rulings of the English courts upon a statute essentially the same as the statute of this State, it having been held in one case at least that the attestation was good where the witness had been deceived, and led by the testator to believe that the writing subscribed was a deed, and in another where the writing was concealed. (Bacon's Abridgment, vol. 10, pages 494 and 502, title Wills and Testaments; 7 Bingham, 457, Wright v. Wright.)

In our opinion it is not necessary, under the facts of this case, that the subscribing witnesses should have been told that the paper signed was a will, or that they should know the character of the paper, or in fact that there was any writing, other than the signatures, on the paper at the time they subscribed it.

As to the second question suggested, it is insisted by appellants' counsel that as the words and figures "Louisville, Ky., April 3d, 1877," follow the signatures of the testator and of the witnesses, the paper was not signed at the "end or close thereof," as required by the statute.

This position is untenable. Neither the date nor the name of the place of making the will is, in this case, a part of the will. The date to a will or codicil is immaterial in all cases. It may be established by oral evidence in contradiction to the written date embodied in the writing. While it is conceded by counsel that ordinarily the date is immaterial, it is insisted that the circumstance that the testator had made several wills during his life-time constituted this an exception to the rule, as it is important that the codicil appear to have been written subsequent to the will probated in order to affect it. This does not appear to us to be an exception to the rule that the date is not an essential part of the will; but the fact that several wills were made rendered it proper that it should be established in some way that the codicil was executed subsequent to the will admitted to probate, which was done by one of the witnesses, who states that he subscribed the codicil some time in the year 1877, while the will admitted to probate was executed in 1873. The circumstances of each case must determine the importance of the date of execution of a will or codicil, and when it becomes the duty of the propounders to fix the date of execution, it may be done in the same way that the time of any other transaction is established—by the writing itself, or by extraneous proof.

On the third point suggested, it is insisted that the court erred in permitting Pragoff, one of the devisees, to state that after the execution of the codicil he handed it to the testator, and that as some of the contestants were infants under fourteen years of age, and the statement of the witness was "concerning an act done by, and a transaction with, the decedent," it was in violation of the provisions of section 606 of the Civil Code.

Section 605 of the Code provides that every person, sub-ject to the modifications contained in section 606, shall be competent to testify for himself or another. Subsection 2 of section 606 reads:

"No person shall testify for himself concerning any ver-bal statement of, or any transaction with, or any act done or omitted to be done by, an infant under fourteen years of age, or one who is of unsound mind or dead when the testi-mony is offered to be given, except for the purpose and to the extent of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted."

We think the evidence offered was competent, the object of the statute evidently being to remove the common law ground of incompetency on account of interest, and the exceptions contained in the statute being introduced to secure equality, as said by this court in Hardin's adm'r v. Taylor, 78 Ky., 596. Any other construction would operate in a contest on the probate of a will to exclude the evidence of one interested as to any statement made by the testator in the absence of one having or claiming a con-flicting interest, or when the person having or claiming such interest is under fourteen years of age. Such a result was clearly not contemplated, and the manifest object being to remove all objection to competency on the ground of interest and to secure equality, any exception insisted upon under the statute ought to be made to clearly appear, and ought not to be established by a doubtful or strained construction. Similar statutes in other states have been so construed, and, as said in Wharton on Evidence, sec-tion 464, they are remedial, and their operation will not

be limited by a technical closeness of construction. The exception is properly applied when the person offering to testify is seeking to establish against the decedent a liability to himself, and through the claim thus established to reach the estate. In such cases there is no equality. There is no mutuality, and there ought not, therefore, to be any admissibility; one litigant being silenced by death, the other ought to be silenced by law. (Wharton on Evidence, sec. 466.) But in cases like the one under consideration there is no such inequality. The several claimants of the estate are on an equal footing, and there is perfect mutuality and equality so far as opportunity and the right to testify is concerned; and that such opportunity and right is sought by the statute is manifest from other provisions. For instance, by subdivision *c* of subsection 2, it is provided that the witness may testify for himself when the decedent, his representative, or some one interested in the estate, shall have testified against the witness in reference to any statement by, or transaction with, the decedent; and subsection 3 provides that no one shall testify against one who is before the court by constructive process only.

As to the fourth point, it is objected that the court below erred in giving instruction "C," because it is in conflict with instruction number three, which was given at the instance of appellants, and which they claim embodies the law.

Instruction "C" is as follows:

"If the jury believe from the evidence that R. J. Usher signed the paper 'B' (the codicil), this is *prima facie* evidence that he knew its contents before such signing."

Instruction number three referred to is as follows:

"That from the signing of a last will and testament by a testator, the presumption ordinarily is that he knew its

Flood, &c., v. Pragoff, &c.

contents; but in the case at bar, if the jury believe from the evidence that the paper marked 'B,' except signatures thereto attached, was written by Wm. Francis Pragoff, and that he and his children were devisees and took benefits under said paper, then this presumption is repelled, and unless they find from additional evidence that said paper 'B' expressed the intentions of said Usher, or that he knew its contents, they should find said paper not to be any part of the will of said Richard J. Usher, deceased."

Without stopping to inquire whether these instructions, or either of them, even abstractly present the law correctly, it is enough to say that neither should have been given; but as they neutralize each other, and do not appear to have been prejudicial to appellants, we will not reverse for this error. These instructions ought not to have been given, because they give undue prominence to certain portions of the evidence, when the whole of it should have been left to be considered and weighed by the jury, without an intimation from the court as to the weight they should give any particular portion of it. Contested will cases are to be tried as any other case in which there is an issue of fact for the jury. The court must pass upon the admissibility of the evidence offered, but when it goes to the jury, they are the sole judges as to the weight they will give it. (Stokes' ex'r v. Shippen, &c., 13 Bush, 183.)

Judgment affirmed.