CASE 9—ACTION BY ELIZABETH THOMPSON'S EXECUTOR AGAINST WIL-
LIAM BROWN AND OTHERS FOR A CONSTRUCTION OF THE WILL OF
ELIZABETH THOMPSON, DECEASED.—JUNE 17.

# Thompson's Exr. v. Brown and Others.

APPEAL FROM MARION CIRCUIT COURT.

FROM THE JUDGMENT THE EXECUTOR APPEALS.    REVERSED.

WILLS—CHARITABLE BEQUESTS—BENEFICIARIES—CERTAINTY.

Held:    A will devising testator's property to her executor, to be
by him distributed "to the poor in his discretion," is sufficiently
definite, under Kentucky Statutes, 1899, section 317, requiring
that gifts for such a purpose shall point out the purpose of the
charity, and the beneficiaries thereof, with reasonable certainty.

THOMPSON & SPAULDING, FOR APPELLANTS.

(The original brief of the attorneys for appellant not being in
the record, the reporter, in lieu thereof, takes the following sug-
gestions from appellant's brief on petition for a rehearing.)

In appellant's petition for a rehearing we aimed to call the
court's attention to the principles established by the courts up
to that time, upon the question involved in this action, but
had not at that time seen the opinion in the case of Coleman,
&c., v. O'Leary's Exr., 24 R., 1248, which seems to have been
a better considered case than the one at bar, and upon a similar
question under    discussion,    the    court was unanimous in its
opinion.    The twentieth clause of the O'Leary will involves the
same principles as the clause in dispute in this action.    Of
course, it is impossible to find the words of any two wills alike,
but the principle to be settled in these two clauses is the same.

"In the opinion in this case Judge DuRelle claimed that it
would require the aid of the ultra cypres doctrine to establish
the residuary clause in this will, but established the residuary
clause in the O'Leary will involving the same principle.    In this
case the clause leaves the remainder of testatrix' estate to be
distributed to the poor by her executor in his discretion.    In
the O'Leary will the remainder of the estate was to be invested
and placed in trust to the Rt. Rev. Bishop of the Catholic dio-
cese of Louisville, and three others to be chosen by him for
the establishment of a home for 'poor Catholic men' as soon as
the proceeds of the estate would justify.

"Now it is admitted that had the testatrix in this case placed a territorial restriction in this residuary clause of her will, it would have been good. Had she said 'the poor of the county, State, or some district of the State,' it would have been good. Is not the clause under discussion in the O'Leary will fully as indefinite in this particular? It does not state where on the face of the earth this home for the 'poor Catholic men' is to be established, nor from what territory the poor Catholic men are to be selected, but the *court* located the home in the city of Louisville, and the selection of the poor Catholic men' to the diocese of the city of Louisville, which is the State of Kentucky.

"Now in this case what is the territorial jurisdiction of the executor? It *is certainly confined to the State of Kentucky, as* under his appointment as executor he has no authority anywhere else. If the court can settle who the beneficiaries are from the poor Catholic men of Kentucky, can't it settle who they are from the poor persons of the State? The petition alleges that she had always lived in this State, and in, the county where the will was made, and where she died, and it would be a rash presumption to indulge that this good woman intended her executor would ever go out of the State to find the objects of her bounty under this devise."

### CITATIONS.

Coleman v. O'Leary, 24 R., 1248; Curling Case, 8 Dana, 38; Atty. Genl. v. Wallace, 7 B. Mon., 612.

H. P. COOPER, ATTORNEY FOR APPELLEES.

This appeal involves the construction of item eleven of the will, which is as follows:

"I will and direct that my house and lot in Raywick be sold at such time and on such terms as my executor may deem best, and I will that the proceeds, together with whatever other estate I may have after the payment of the aforesaid bequest and funeral expenses, shall be collected by my executor and by him distributed to the poor in his discretion."

Your honors will observe that the "poor" named in the will were not designated by age, number, color, or sex, nor by any creed, church, or school district. They were not located in any district, county, or State. It is impossible for the chancellor to judicially identify the beneficiaries under this clause, and it was therefore his duty to declare the same void. Cromie's Heirs v. Louisville Orphan Home, 3 Bush, 374; Leeds v. Shaw's Admr., 82 Ky., 82; Spalding, &c., v. St. Joseph Industrial School, 21 R., 1107; Civil Code, sec. 25.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REHEARING
GRANTED, ORIGINAL OPINION WITHDRAWN AND CASE REVERSED.
For original opinion see 24 R., 1066; 70 S. W., 674.

The eleventh clause of the will of Elizabeth Thompson,
who died in September, 1897, reads as follows: "I will
and direct that my house and lot in Raywick, Ky., be sold
at such time and on such terms as my executor may deem
best, and I will that the proceeds together with whatever
other estate I may have after the payment of the afore-
said bequest and funeral expenses shall be collected by my
executor, and by him distributed to the poor in his discre-
tion." The only question for decision upon this appeal is
whether the gift in this clause is sufficiently definite to be
enforceable under section 317 of the Kentucky Statutes of
1899, which requires that such gifts shall point out with
reasonable certainty the purpose of the charity and the
beneficiaries thereof. Very different rules from those that
are applied in establishing and administering private trusts
will be applied in order to give effect to the intention of a
donor to establish a public charity. In discussing this
question, Perry on Trusts, section 687, uses this language:
"If in a gift for private benefit the *cestuis que trustent* are
so uncertain that they can not be identified, or can not come
into court and claim the benefit conferred upon them, the
gift will fail. But if the gift is made for a public, chari-
table purpose, it is immaterial that the trustee is uncertain
or incapable of taking, or that the objects of the charity
are uncertain and indefinite. Indeed, it is said that vague-
ness is in some respects essential to a good gift for a public
charity, and that a public charity begins where uncertainty
in the recipient begins." The general doctrine upon the
question of charitable bequests is that the beneficiaries
should be designated as a class only, leaving the number

and individuals to be determined by the trustees who administer it. Devises for the poor have always been favorite modes of dispensing charity by benevolent persons, and trusts created for this purpose have been generally upheld by the courts. In Moore's Heirs v. Moore's Devisees, 34 Ky., 354, 29 Am. Dec., 417, it was decided: "When an ascertainable object is designated by the donor in general and collectible terms, as the poor of a given county or parish, or when a person is appointed by him to select a described portion or kind or number from a designated class, the chancellor, sitting as judge in equity, will interpose on the ground of trust." In the case of Curling's Adm'rs v. Curling's Heirs, 8 Dana, 38, 33 Am. Dec., 475, James Curling left the residue of his estate for the use and benefit of a public seminary, not designating where it was to be located. The circuit judge held the devise void for uncertainty, but, upon appeal to this court, Judge Robertson, delivering the opinion of the court, said: "The testratrix, by designating a general object of charity (a public seminary), must be understood as intending either a seminary or the seminary of his county, or any seminary which his executor or a court of equity, in the exercise of a sound discretion, should select as best adapted to effect the object of charity. Upon either of these hypotheses, the testator's purpose, as declared and circumscribed by himself, may be fulfilled by applying the fund to a specific object, without any hazard of perverting his bounty in a manner not contemplated by him and authorized by his will. Therefore, according to principles established as perfectly judicial, we are of the opinion that the devise created a charitable trust, which may be executed according to law, and without violating the will of the testator or making a will for him, and therefore we conclude that the circuit court ought to

have decreed the appropriation of the profits of the devise
to the use of the Trigg Seminary, and appointed a trustee
to execute the trust." In the very recent case of Spalding
v. St. Joseph's Industrial School, 107 Ky., 382, 21 R., 1107,
54 S. W., 206, Judge DuRelle uses this language: "All
the Kentucky cases have sustained the charitable uses
therein considered because the court held that a charitable
object was indicated, or a class of charitable objects desig-
nated from which choice was authorized to be made. In
some of them there is room for difference of opinion as to
the certainty of the objects of the charitable uses sustain-
ed, but the courts have always held that they were certain,
either by being designated by the donor, or one of a class
designated by him from which choice was authorized to be
made." In Bedford v. Bedford's Adm'r, 99 Ky., 273, 18 R.,
193, 35 S. W., 926, the devise was to the State of Kentucky in
trust for the benefit of the State, the profits therefrom to be
appropriated annually forever towards the education of the
children of the State—particularly the poor and most unintel-
ligent. The devise in this case was sustained as sufficiently
definite. The court said: "Trusts must be for the benefit of an
indefinite number of persons, for, if the beneficiaries are per-
sonally designated, the trust lacks the essential element
of indefiniteness, which is one characteristic of a legal char-
ity, and which distinguishes it from a mere private trust."

There has been considerable diversity in the decisions
of the courts of the various States of the Union as to the
extent they will go in upholding an indefinite trust. In
some States—particularly Maryland, Virginia, Michigan,
New York and Wisconsin—it has been held that courts
of equity have no greater jurisdiction to enforce public
than private trusts. On the other hand, in Kentucky, Maine,
Massachusetts, Missouri, Pennsylvania and many other

States where the principles of 43 Eliz., c. 4, are accepted, they have gone to the farthest limit in this regard. In this State sixteen decisions have been reported upon this question of charitable uses, beginning with the case of Glass and Bonta v. Read, 2 Dana, 170, in which charitable bequests have been uniformly upheld. But it is insisted that the amendment to section 317 of the Kentucky Statutes passed by the General Assembly in 1893, which is in these words, "if the grant, devise, gift, appointment or assignment, shall have pointed out with reasonable certainty the purposes of the charity and the beneficiaries thereof," etc., was intended by the lawmaking department of the government to change the rule which has heretofore prevailed in this State. The words of the amendment are the same as those used in several opinions sustaining bequests to various charities, and it would be more consistent with reason and common sense to believe that the Legislature simply intended to crystallize into the statute law the doctrine which has been so often announced by this court, and which has been accepted with approval by the profession, the General Assembly, the public at large, and by most eminent text-writers. The gift in this case is to the poor as a class, and the testratrix has appointed her executor to select from this class the persons who are to receive the benefit of the charity. In our opinion, the judgment of the trial court is in conflict with what has become the settled legislative policy in this State with respect to public charities; and Spalding v. St. Joseph's Industrial School, 107 Ky., 382; 21 R., 1107, 54 S. W., 206, relied on to support the judgment of the trial court, is not in conflict with the other cases, and the devise in this case should be upheld.

For reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.