## McNamara, et al. v. Coughlin, et al.

(Decided September 29, 1914.)

Appeal from Mason Circuit Court.

1. Wills—Attesting Witnesses—Section 4836, Kentucky Statutes.—A devisee under a holographic will who merely expresses an opinion that the will is in the handwriting of the testator, is not an attesting witness within the meaning of Section 4836, Kentucky Statutes.
2. Wills—Contest—Verdict—Evidence.—In a will contest, held that the finding of the jury in favor of the will was not flagrantly against the evidence.

FRANK P. O'DONNELL, A. D. COLE and JOHN McCARTNEY for appellants.

J. M. COLLINS, WORTHINGTON, COCHRAN & BROWNING for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is a contest over the holographic will of John J. Coughlin, who died a resident of Mason County on December 11, 1910. The will, which was probated by the Mason County Court in September, 1911, is as follows:

"Sept. 24, 1909.—I will my interest in the marrin toll farm to my partner T. A. Coughlin' children Margaret Minnie Lizzie Josephine and Morris Coughlin my half interest of the Mrs. Carrie Walton farm to his son Morris Coughlin I Point my partner to settle mi business to Pay all My lawful debts.

"J. J. COUGHLIN."

The testator was never married. He left surviving him four brothers, T. A. Coughlin, Morris Coughlin, Joseph Coughlin and Dennis Coughlin, and one sister, Mrs. Kate McNamara. He had another sister, Mrs. Lizzie Porter, who had died some years before at Washington Courthouse, Ohio, leaving three children who still live at that place. The contestants are Morris, Joseph and Dennis Coughlin, Mrs. McNamara and the children of Mrs. Porter. The contestees are T. A. Coughlin, his wife, and their four children, Margaret, Minnie, Lillie and Josephine. From the order of probate the contestants prosecuted an appeal to the Mason Circuit Court, where, pursuant to a verdict of a jury, the will in question was established as the last will and testament of J. J. Coughlin. The contestants appeal.

According to the evidence for the propounders, the testator had, for about 30 years, made his home with his brother, T. A. Coughlin, on a farm near Germantown, Kentucky, which they jointly purchased from Marion Tolle. Some years before, the testator and his brother, T. A. Coughlin, had jointly purchased the shares of their other three brothers and two sisters in a portion of the farm which had belonged to their parents. T. A. Coughlin had been married for 26 years prior to the testator's death. T. A. Coughlin had five children, one boy named Morris, and four girls, Margaret, Minnie, Lillie and Josephine. When the testator died Margaret was 22, Minnie 21, Lillie 19, Morris 16, and Josephine 15. At the time of his death, decedent owned an undivided one-half interest in the 60-acre farm which had belonged to his father. He also owned an undivided half interest in the Marion Tolle farm, and a half interest in the Carrie Walton farm. In addition to his interest in these farms, he also owned some personal property. Great affection existed between the children of T. A. Coughlin and the testator. When the testator was ill, they would nurse and take care of him, and prepare appetizing dishes for him to eat. The testator called these children by pet names. Just prior to testator's death, the boy Morris had an attack of appendicitis. Shortly after the news of this attack was received by the testator, the testator had a violent attack of heart trouble, and soon afterwards died. The boy Morris lived about two days longer. The two were buried

together. Owing to the bereavement in the family, no particular examination was made of the contents of the room occupied by testator. Some time in the following spring, Margaret and Josephine went into their uncle's room for the purpose of straightening and putting his things away. In one of the locked drawers they found a paper box. In that box were certain deeds to his real estate, some religious papers, a valentine, and the candle which he held in his hands when he took his first communion. The box also contained the curls which had been clipped from Morris' head when his hair was first cut, and some postal cards which had been written to testator by Margaret and Minnie while they were away at school. In that same box, enclosed in an envelope, was the alleged will. The children did not know it was a legal document. They showed it to their father, who thought it was a deed. Eleven witnesses, who claimed that they were acquainted with the handwriting of the testator, testified that in their opinion the paper in contest was in his handwriting. Other witnesses testified to the fact that the testator had expressed a purpose to leave his property to the children of T. A. Coughlin, and one witness stated that testator had remarked to him that he had fixed it so that Tom's children would get everything he had.

For the contestants a number of witnesses, who claimed to be acquainted with the testator's handwriting, including some bank officials, stated that, in their opinion, the handwriting in the alleged will bore no resemblance to testator's handwriting. In their opinion, it was a forgery. Other witnesses testified that the testator declared that he had no intention of making a will, but would let the law take its course.

In addition to the foregoing evidence with reference to the genuineness of the handwriting, each side introduced several specimens of the handwriting of the testator.

Two grounds are urged for reversal: (1) Incompetency of the devisees to testify; (2) the verdict is flagrantly against the evidence.

(1) It is insisted that the devisees are disqualified by section 4836, Kentucky Statutes, which is as follows:

"If any person who attests the execution of a will shall, after its execution, become incompetent to be admitted a witness to prove the execution thereof, such

will shall not, on that account, be invalid. And if a will is attested by a person to whom, or to whose wife or husband, any beneficial interest in any estate is thereby devised or bequeathed, if the will may not be otherwise proved, such person shall be deemed a competent witness; but such devise or bequest shall be void, except that, if such witness would be entitled to any share of the estate of the testator in case the will was not established, so much of his share shall be saved to him as shall not exceed the value of what is so devised or bequeathed."

It is argued that the devisees who testified to the genuineness of the will are, in effect, attesting witnesses, and fall within the spirit of the statute. It will be observed, however, that the statute applies to a person "who attests the execution of the will." The question is: Who is an attesting witness? Section 4828, Kentucky Statutes, provides:

"No will shall be valid unless it is in writing, with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

It will be seen from the foregoing statute that if a will is not wholly written by the testator "the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator." We, therefore, conclude that an attesting witness within the meaning of section 4836, *supra,* is one who fulfills the conditions required by section 4828; that is, he is one in whose presence the will is signed or acknowledged by the testator, and who subscribes his name in the presence of the testator. Such a witness is not one who merely expresses an opinion that the will is in the handwriting of the testator. He is a witness who testifies from knowledge obtained by seeing the testator subscribe his name, or having the testator acknowledge the subscription in his presence. The statute has no reference to devisees who, like other witnesses, merely give it as their opinion that the will is in the handwriting of the testator. Nor should the statute be extended so as.

to include devisees who do not naturally fall within the class referred to in the statute. Indeed, it is the rule to limit the application of such a statute to the attesting witness even though the word "attesting" is not used. Thus, the Kansas Statute (General Statutes, 1909, section 9786) provides: "If a devise or bequest be given to a person who is a witness to the will, and the will cannot otherwise be proved than by the testimony of such witness, etc." The Supreme Court of Kansas held that the words "witness to the will" referred to an attesting witness. Kirby v. Sellards, 82 Kas., 291, 108 Pacific, 73, 28 L. R. A. (N. S.), 270. Since the children of T. A. Coughlin, who were devisees under the will, are not disqualified as witnesses by Section 4836, Kentucky Statutes, and since the incompetency of witnesses because of interest has long since been removed, Civil Code, section 605, Flood v. Pragoff, 79 Ky., 607, it follows that the children of T. A. Coughlin were competent to testify, and that the first contention of contestants is without merit.

(2) As to the genuineness of the will, the evidence is very conflicting. A number of witnesses testified on each side. Specimens of the handwriting of the testator and also the original copy of the will were before the jury. It is true that there is a dissimilarity between the alleged will and other specimens of the testator's handwriting, but there is also a dissimilarity between each of these specimens and the other specimens. In view of the number of witnesses testifying on each side, and the number of circumstances that necessarily entered into the determination of the genuineness of the will in question, we conclude that the question was one peculiarly for the jury, and we are unable to say that its finding was flagrantly against the evidence.

Judgment affirmed.