## Caddell's Heirs, et al. v. Caddell's Executrix, et al.

(Decided May 8, 1917.)

### Appeal from Garrard Circuit Court.

1. Wills—Contest—Evidence—Attesting Witnesses.—The due execution of a will is a question of fact to be determined from all the evidence in the case, and not from the testimony of the subscribing witnesses only. If the evidence, taken as a whole, is sufficient to show that the will was properly executed, its validity should be upheld even against the testimony of one or both of the attesting witnesses.

2. Wills—Contest—Attesting Witnesses—Evidence—Sufficiency.—In a will contest, evidence of the due execution of the will held to make a question for the jury, notwithstanding the evidence of one of the attesting witnesses that he did not see the testator's signature, and the evidence of the other attesting witness that he did not think he saw such signature.

3. Wills—Establishment—Evidence—Attesting Witnesses.—Kentucky Statutes, section 4836, making one "who attests the execution of a will" a competent witness if he is a beneficiary under the will, only if the will cannot otherwise be proved, and then with the result of his devise or bequest being void, applies only to persons who subscribe the will as attesting witnesses under section 4828, and does not prevent persons who are not subscribing witnesses from testifying to the acts and declarations of the testator.

4. Wills—Devisees—Competency.—The incompetency of witnesses because of interest no longer exists.

5. Witnesses—Competency—Confidential Communications—Husband and Wife—Acts and Declarations of Deceased.—Neither subsection 1, section 606 of the Civil Code, providing that "neither a husband nor his wife shall testify while the marriage exists or afterwards concerning any communication during marriage," nor subsection 2, section 606, providing that "no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done, . . . by one who is of unsound mind, or dead when the testimony is offered to be given," applies to will contests; and the widow or other devisee under a will may testify to the acts and declarations of the testator, notwithstanding such sections.

STEPHENS & STEELY and J. E. ROBINSON for appellants.

L. L. WALKER and WILLIAM HERNDON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

By his last will and testament A. J. Caddell devised all of his property to his widow, Martha Caddell, with

the request that she give to her niece, Dora Meadows, a good education and such sums of money and others things as his wife might believe he would have given her if living. The attesting clause of the will is as follows:

"Signed in the presence of each other and at the request of the testator signed in his presence as witnesses of the foregoing instrument for the purposes therein declared.

"Witness our signatures this the 20th day of January, 1902.

"John Caddell,
"S. B. Stanaford."

The will was contested by the testator's brothers and sisters and the children of certain deceased brothers and sisters, on the ground of undue execution and mental incapacity. The will was probated by the county court, and on appeal to the circuit court the jury returned a verdict in favor of the will. The contestants appeal.

Contestants seek a reversal on the ground that the evidence of the proper execution and acknowledgment of the will was insufficient to take the case to the jury, and that Mrs. Caddell and Dora Meadows were incompetent witnesses.

At the time of his death the testator owned property of the value of $10,000.00 or $12,000.00, which had been accumulated through the joint efforts and sacrifices of himself and wife. The will was executed on the night of January 20, 1902, immediately before the testator's departure for Oklahoma. John Caddell and S. B. Stanaford, the attesting witnesses, are, respectively, the brother and cousin of the testator. John Caddell, after identifying his signature on the will, testified that the testator came into the room where he and S. B. Stanaford were and stated that he had a paper that he wanted them to sign. Caddell went to the desk to sign it, and the testator put his hand on the paper and said Caddell did not have to see it. Caddell did not see the signature or the heading, because the testator prevented him from doing so. So far as he was concerned, the paper was blank. S. B. Stanaford, the other subscribing witness, testified that the testator said that there was a paper he wanted John Caddell and him to sign. John signed first and he signed under him. Nothing was said by the testator as to the character of the paper. He did not think he saw the signature of A. J. Caddell on the paper. However, he identified the paper in question as the one

which he and John Caddell signed in the presence of each other.

Mrs. Caddell testified that her husband brought the will in question into the room where she and Dora Meadows were and said: "Dora, I am giving you and your aunty everything I have got." Dora said: "When a man is ready to die is the time for a man to make his will." Her husband said: "No, Dora, when a man is well and strong is the time for a man to make his will," and he laid the will down on the desk. She had previously seen him writing on the typewriter, but did not know he was writing a will. Soon after his remark to Dora, John Caddell and S. B'. Stanaford came. Her husband gave the will to Caddell first. The latter took it and made a motion with his hands to open it. Her husband said, "It don't matter, just sign it." John Caddell signed first and then Mr. Stanaford wrote his name. At that time she was in the dining room, which was separated from the sitting room by folding doors, and was about fifteen feet away. Her husband left that night and she saw the will on the desk the next evening. Since that time she had retained possession of the will and repeatedly read it over in her husband's presence. The signature on the will was in her husband's handwriting. After the will was executed John Caddell was permitted to read it. The will presented in evidence was precisely in the same condition as when she found it. Dora Meadows corroborates Mrs. Caddell as to the testator's remark about giving her and her aunty everything, and about the time for a man to make a will. When the testator came into the room where Stanaford and John Caddell were he said: "Here, boys, sign this paper as witnesses to my signature." She saw the testator hand the pen to John Caddell, but she did not see him and Stanaford sign the will. She afterwards saw the will in the desk. She identified the paper in contest as the paper which she has been speaking about. Just before the will was brought into the room she saw the testator writing on the typewriter.

Since the statute requires that the subscription shall be made or the will acknowledged by the testator in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator, and since the attesting witnesses both state that they did not see the testator's signature, and there was an utter failure to show that the subscription was acknowledged in their presence, it is argued that the trial court

should have held, as a matter of law, that the execution of the will was not properly proven. While it may be true that, in order to constitute a valid acknowledgment of a will, the signature of the testator must be visible to the witnesses so that they can identify it as the signature which the testator acknowledged, the jury are not required to accept as true the statements of the attesting witnesses on this point, especially where one of them will profit if the contest is successful and the other attesting witness is his kinsman. The reason for the rule is that statutes with reference to the execution of wills are enacted for the protection of testators, and not with the view of placing such solemn acts at the mercy of attesting witnesses, so that they, acting from prejudice or self-interest may have it in their power, after the testator's death, to defeat his intention. To avoid such a contingency the courts generally hold that due execution of a will is a question of fact to be determined from all evidence bearing thereon, and not from the testimony of the subscribing witnesses only. Therefore, if the evidence, taken as a whole, is sufficient to show that the will was properly executed, its validity should be upheld even against the testimony of one or both of the attesting witnesses. Abbott v. Abbott, 41 Mich. 540, 2 N. W. 810; Re Christenson, L. R. A. 1916C, 1214, and cases cited in note; Montgomery v. Perkins, 2 Met. 448, 74 Am. Dec. 419; Reynolds v. Sevier, 165 Ky. 158, 176 S. W. 961. Here we have the case of a will executed in the year 1902, and offered for probate and contested in the year 1915. John Caddell, one of the subscribing witnesses, and who would inherit a portion of the testator's estate if the contest should prove successful, claims that he did not see the testator's signature, while S. B. Stanaford, the other attesting witness, and a kinsman of John Caddell, is not certain whether he saw the signature of the testator or not. On the other hand, the genuineness of their signatures to the will in question, as well as the genuineness of the testator's signature, are clearly proven. The will is one which the testator would have naturally made under the circumstances of the case. The attesting clause recites that they signed the instrument in the presence of each other and in the presence of the testator and at his request "for the purposes therein declared." Not only so, but Dora Meadows testified that the testator, when he came into the presence of John Caddell and S. B. Stanaford, the attesting witnesses, said: "Here,

boys, sign this paper as witnesses to my signature."
When we consider all the circumstances attending the
execution of the will, and view the testimony of the sub-
scribing witnesses in the light of the attesting clause and
their selfish interest in the matter, we conclude that the
question of the due execution was for the jury.

The only remaining question is, whether Mrs. Caddell
and Dora Meadows were competent witnesses.

It is insisted that they are both devisees under the will
and are, therefore, disqualified by section 4836 of the
Kentucky Statutes, which is as follows:

"If any person who attests the execution of a will
shall, after its execution, become incompetent to be ad-
mitted a witness to prove the execution thereof, such will
shall not, on that account, be invalid. And if a will is
attested by a person to whom, or to whose wife or hus-
band, any beneficial interest in any estate is thereby de-
vised or bequeathed, if the will may not be otherwise
proved, such person shall be deemed a competent witness;
but such devise or bequest shall be void, except that, if
such witness would be entitled to any share of the estate
of the testator in case the will was not established, so
much of his share shall be saved to him as shall not ex-
ceed the value of what is so devised or bequeathed."

In construing this statute it has been held that it ap-
plies only to a person who attests the execution of a will,
and that an attesting witness is one who fulfills the condi-
tion required by section 4828 of the Kentucky Statutes;
that is, one in whose presence the will is signed or ac-
knowledged by the testator and who subscribes his name
in the presence of the testator. McNamara v. Coughlin,
159 Ky. 810, 169 S. W. 555.

We may further add that the incompetency of wit-
nesses because of interest has long since been removed.
Civil Code, section 605; Flood v. Pragoff, 79 Ky. 607;
Carmical v. Carmical, 32 R. 171, 104 S. W. 1037; Phillips'
Exr. v. Phillips' Admr., 81 Ky. 328, 5 R. 270; McNamara
v. Coughlin, *supra*. We have also held that neither sub-
section 1, section 606 of the Civil Code, providing that
"neither a husband nor his wife shall testify while the
marriage exists or afterwards, concerning any commu-
nication during marriage," nor sub-section 2, section 606
of the Civil Code, providing that "no person shall testify
for himself concerning any verbal statement of, or any
transaction with, or any act done, . . . by one who is
of unsound mind, or dead when the testimony is offered

to be given," applies to will contests; and that the widow or other devisee under a will may testify to the acts and declarations of the testator, notwithstanding such sections. Murphy's Ex'r v. Murphy, &c., 23 R. 1460, 65 S. W. 165; Ellis v. Ellis, 128 S. W. 1058.

Judgment affirmed.