## Russell, et al. v. Tyler, et al.

(Decided May 15, 1928.)

### Appeal from Daviess Circuit Court.

1. Wills.—In probate of mutilated will remaining in testatrix's possession until death, presumption was that testatrix performed the mutilation by which two clauses were cut out.

2. Wills.—Where the revocation of a will, codicil, or any part thereof by testatrix's act and intention is alleged, the primary question to be determined is the intent of the testatrix as to revocation of whole or any part thereof.

3. Wills.—Where evidence prima facie established fact of alteration of will and intent to revoke in part by testatrix, presumption could be corroborated, explained, or rebutted by parol evidence of testatrix's declarations.

4. Witnesses.—In proceedings relative to the probate of a will, where it was shown that two clauses had been cut from will and will remained in testatrix's possession until her death, testimony of a nephew, an heir at law, as to testatrix's statements relative to revocation of her will by cutting, held inadmissible because of incompetency of the witness, under Civil Code of Practice, sec. 606, subsec. 2.

5. Wills.—In proceedings to probate will, where revocation was alleged by mutilation, fact that testatrix had placed the mutilated instrument in an envelope marked as containing her will and had carefully preserved it up to the time of her death held inconsistent with an intention to revoke the entire instrument, and therefore raised a presumption that her intention was to revoke the clauses cut therefrom and to leave the remainder intact as a valid will.

6 Wills.—Under the statute relating to revocation of will, testatrix could revoke part of will and leave remainder intact as a valid will

7. Wills.—Where testatrix had canceled certain paragraphs from her will, leaving a preamble complete in itself and a paragraph making a clear distribution of her residuary estate, so that revocation did not operate to augment the residuary clause, but only left property embraced therein to pass as in cases of intestacy, revocation held not, under Ky. Stats., sec. 4843, to require entire will to be rejected as being too indefinite for construction, in view of proof as to contents of omitted clauses, and that it was clearly established what property passed under the will.

8. Wills.—Difficulty in administering rule as to legacy under a revoked portion of will passing as in case of intestacy does not affect the validity of will, where proper proof is made.

9. Charities.—The cy-pres doctrine has never been adopted in this state to the extent of supplying a beneficiary or purpose, where those objects are not expressed in the will.

10. Charities.—Under Ky. Stats., sec. 317, devise in trust to be used and expended for the benefit of the Young Women's Christian Association in Owensboro, Ky., after such association should be properly organized in Owensboro, held valid, where trustee was not authorized to choose the purpose or select the beneficiary, but was given only discretion to determine whether the association was properly organized and worthy and it appeared in proof that there was a national organization of the association and that a branch had been organized in Owensboro and trustee had recognized it as beneficiary under the will.

LOUIS I. IGLEHEART for appellants.

SANDIDGE & SANDIDGE and C. W. WELLS for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming.

A paper purporting to be the last will of Mrs. Margaret Hawes Clarke was duly proven by the attesting witnesses and probated in the Daviess county court. Claiming that this paper had been revoked by the decedent, her heirs at law appealed to the Daviess circuit court, where a directed verdict and judgment was entered in favor of the will, and contestants have appealed.

The original instrument is made a part of the record in this court. It consists of four typewritten pages and cover attached by a metal clip. The first page consists of a short preamble typed on about one-fifth of a sheet of paper, from which the remainder of the sheet has been cut or torn. The first paragraph on the second page is numbered 3, and the language of the instrument shows an ellipsis at the place where the paper is sundered. As thus probated the will reads:

"I, the undersigned, Margaret Hawes Clarke, being of sound mind and disposing memory, but mindful of the uncertainty of life, do hereby make and publish the following as my last will and testament:

"3. After all my debts are paid and the foregoing bequests made, I bequeath and devise the residue of my estate to Edward H. Clarke as trustee to be held in trust by him and used and expended by him, according to his own best judgment for the benefit of a Young Women's Christian Association of Owensboro, Kentucky, after such an association shall be properly organized in Owensboro, said trustee to be the sole judge as to whether any such association that may be started in Owensboro is properly organized and worthy of said bequest and as to how and when and for what purpose said residue is to be used and expended, except only that it is to be expended in his best judgment for the benefit of a Young Women's Christian Association in Owensboro, Kentucky.

"4. I hereby nominate and appoint Edward H. Clarke as executor of this my last will and testament and request and direct that no bond be required of him and that no appraisement or inventory of my estate be made.

"5. The said Edward H. Clarke both as executor and as trustee as above set out, shall have and is hereby given, full power and authority to manage and control according to his best judgment, any and all of my estate which may be at any time in his hands and to sell or otherwise dispose of same and convert same into money whenever in his judgment it shall be best to do so, and to reinvest all or any part thereof in any way that he may see fit and to at any time change any investment; and any pur-

chaser or transferee to whom the said executor or trustee may sell or transfer any part of my estate, shall take a good title thereto and shall not be required to look to the application of the proceeds.

"6. I wish to be buried by the side of my sister Ella in the Hawes burying ground and a proper stone erected at my grave.

"In testimony whereof I do hereby subscribe my name in the presence of the two witnesses named below this — day of December, 1917.

"Margaret H. Clarke."

It appears that Mrs. Clarke was a widow 71 years of age residing in the Fredericka Apartments in Owensboro. This paper was found in a dresser drawer in her room a short time after her death, in an unsealed envelope marked, "Will of Margaret H. Clarke." C. W. Wells, an attorney, testifies that he drew the original will of Mrs. Clarke in December, 1917, from a memorandum prepared by herself and retained a carbon copy which he produced on the trial and which is identical with the paper probated, except that the first page of the copy included clauses 1 and 2, provisions eliminated from the instrument as probated. These clauses read:

"1. I give and bequeath to James D. Russell my secretary and bookcase that is now at his home, and to Mildred his wife, my sewing machine which she now has in use; to James L. Hawes with my dear love, my teacher's Bible that I use all the time; to the daughters of my sister, Eliza N. Tyler, and her daughter-in-law Maggie S. Tyler, and the daughters of my brother, George T. Hawes, my clothing and other tangible personal property in my rooms and trunks, and in E. H. Clarke's attic and at James D. Russell's home, to be divided among them share and share alike; to Mary C. Timberlake, Lula C. Bright, Pattie C. Gilbert, Nancy C. Parrish, Janie T. Clarke, Marguerite H. Clarke, Anna Noble, Lou Gordon and Margaret H. Noble, my dearly loved great nieces, and to Eloise P. Hawes, my sister-in-law, the sum of twenty-five ($25.00) dollars each; to my loved Walnut Street Baptist Church, Owensboro, Kentucky, one hundred dollars.

"2. I desire and direct that one hundred dollars be turned over to and held by Misses Sue and Carey Hawes to be held by them in trust and the

income thereof used by them to take care of my family graves and to help take care of the Hawes burial ground in which said graves are located. Said money is to be held by them and invested in their discretion and they are not to be required to report to any one or to settle with any one with reference to said fund."

Mr. Wells further testified that, after drawing the will, he explained to Mrs. Clarke how it should be executed and witnessed, and delivered it to her before this was done, and there is no direct evidence, showing when clauses 1 and 2 were removed.

On the trial in the circuit court the contestants offered to prove by J. D. Russell, a nephew and one of the heirs at law of Mrs. Clarke, that on Sunday before her death on Wednesday he called on the decedent at her request, and she told him: "James, I have destroyed my will by tearing it or cutting it. I want you to get Clarence Wells to write me a will. Will you get him to come around here Monday?" He told her that he would, and she continued: "I have destroyed my will; the Hawes girls (her nieces) are destitute in a way; they have lost their money, and I want to leave my estate to them." She said further that she thought "charity ought to begin at home." Witness left about 11 o'clock. The next morning he consulted with her physician, who told him that she was unable to make a will, and she died on Wednesday following.

The court sustained an objection to his testimony and it is earnestly insisted that this was error. The competency of his evidence depends on (1) the admissibility of the evidence; (2) Mr. Russell's competency as a witness.

1. As we have seen, the language of the will shows the elimination of two paragraphs on the first page. If this was done before execution, it could have no effect on the validity of the will, but, as indicated above, the will was drawn from a memorandum made by testatrix. She and her attorney had different conversations about it and it clearly appears that it was in the form she desired; and, as the will was executed shortly thereafter without any intimation to the attesting witnesses of any change therein, we may infer that the alteration was made after its execution. Proceeding on this assumption, as the instrument remained in the

possession of testratrix until her death, it will be presumed that *she* made the alteration mentioned. As to the effect of such alteration, our statute provides:

> "No will or codicil, or any part thereof, shall be revoked, unless under the preceding section, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence, and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke." Ky. Stats., sec. 4833.

Thus by the same character of act and intention, one may revoke a will, codicil, or any part thereof, and here the primary question to be determined is the intent of the testatrix. If by such alteration testatrix intended only to revoke clauses 1 and 2, the remainder of the will should be upheld, unless invalid for some other reason; but, if she cut out these clauses with the intention of revoking the entire instrument, her purpose in so doing should be upheld. The evidence prima facie established the fact of alteration *by her* and of an intent to revoke in whole or in part, which presumption may be corroborated, explained, or rebutted by parol evidence of her declarations in reference thereto. Atherton v. Gaslin, 194 Ky. 400, 239 S. W. 771; In re Newell Beauchamp's Will, 4 T. B. Mon. 461; Youse v. Forman, 5 Bush, 337. It follows that the evidence of Mr. Russell is admissible, if he was a competent witness.

2. As to his competency, subsection 2 of section 606 of the Civil Code provides:

> "Subject to the provisions of subsection 7 of this section, no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by an infant under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given except for the purpose, and to the extent, of affecting one who is living, and who, when over 14 years of age and of unsound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted, unless—(a) the infant or his guardian

shall have testified against such person, with reference to such statement, transaction or act; or, (b) the person of unsound mind shall, when of sound mind, have testified against such person, with reference thereto; or (c) the decedent, or a representative of, or some one interested in, his estate, shall have testified against such person, with reference thereto; or (d) an agent of the decedent or person of unsound mind, with reference to such act or transaction, shall have testified against such person, with reference thereto, or be living when such person offers to testify, with reference thereto.''

It is argued, that this section has no application to will contests and may be entirely ignored in such trials. A number of authorities are cited in support of this proposition, all of which date back to Milton v. Hunter, 13 Bush, 166, and Cave's Devisees v. Cave's Heirs, 13 Bush, 454. Those opinions were based upon the provisions of section 22, c. 37, of the General Statutes, which removed disqualification on account of interest from all witnesses, except as provided in section 25 of that chapter, where the adverse party was deaf, dumb, an infant, a lunatic, executor or administrator of a deceased person, or an heir of a deceased person, in which event a claimant was not permitted to testify against an estate or against a person under such disability unless some one had testified in his behalf. Clearly, under that statute, a party was qualified to testify as to otherwise admissible statements of decedents in all cases except where his adversary was under one of the disabilities mentioned; and the court properly held that a will contest was not a suit against an estate and that, therefore, heirs and devisees were competent witnesses in such cases. But it is clearly apparent from the Code provisions, supra, that they were intended, subject to certain exceptions, to prohibit a person from testifying for himself as to any act done or omitted to be done, or transaction with or verbal statement of a deceased person, even though the estate of a decedent should benefit thereby. However, in later cases involving will contests this change in the statute seems to have been overlooked and the court has continued to follow the ruling in the cases, supra; it being suggested in some of the opinions that parties interested in such contests stand on an equal footing, and that equality can best be obtained by permitting the in-

troduction of such evidence. Flood v. Pragoff, 79 Ky. 607; Murphy v. Murphy, 65 S. W. 165, 23 Ky. Law Rep. 1460; Eichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013; Williams v. Williams, 90 Ky. 28, 13 S. W. 250, 11 Ky. Law Rep. 828; Phillips v. Phillips, 81 Ky. 331; Ellis v. Ellis (Ky.) 128 S. W. 1058; Carmical v. Carmical, 104 S. W. 1037, 32 Ky. Law Rep. 173; Caddell's Heirs v. Caddell's Ex'r, 175 Ky. 505, 194 S. W. 541; McNamara v. Coughlin, 159 Ky. 810, 169 S. W. 555.

After the adoption of the Code provision the same view obtained in numerous civil cases involving different causes of action, though in others the Code provision was literally construed, and two conflicting lines of decisions arose. This produced so much confusion that in Combs v. Roark, 206 Ky. 460, 267 S. W. 210, it was thought well to determine which of the conflicting lines of construction we would follow in the future, and after a thorough consideration it was deemed well to follow the mandatory provisions of the Code. As to wills, it was said:

"Under our decisions a personal representative who has no pecuniary interest in the result of the trial may testify in behalf of the estate."

And:

"In will contests all parties may testify as to the testator's mental condition. This ruling is so well established it will not be disturbed, but it will not be extended."

The above quotation is dicta, but the question is now presented directly in a will case. Mr. Russell is clearly an interested party and is testifying for himself as to a detached conversation with the testratrix at a time no one else was present, and not in an effort to show mental incapacity nor undue influence. Certainly no distinction can be drawn between the application of the Code provision to the facts of this case and its application to the facts of other civil cases; and to authorize his testimony is to emasculate the Code provision and render it abortive. We do not feel authorized to do this, but, on the other hand, after mature deliberation, have decided to adhere to the reasoning advanced and the conclusion reached in the Combs case, supra, thus amplified.

In view of the established rule of construction permitting parties to testify in will contests as to the mental

condition of the testator and the facts upon which they base their opinion as well as upon issues of undue influence, we feel that it would unsettle the practice to overrule the long line of decisions so holding, and we are not prepared to take such drastic action. So much must be yielded to the doctrine of stare decisis, especially as in the absence of statutory prohibition many good reasons can be offered for the admission of such evidence. But we are not disposed to extend the rule further. It follows that the court did not err in rejecting this evidence.

3. Omitting the evidence of Mr. Russell and looking alone to the will and the circumstances surrounding testatrix prior to her death, we find that with paragraphs 1 and 2 omitted the preamble is complete in itself, and paragraph 3 makes a clear distribution of the residuary estate. In this condition the instrument was placed in an envelope marked, "Will of Margaret H. Clarke," and was carefully preserved by her up to the time of her death, all of which indicates that she regarded it highly and meant for it to be operative. These facts are inconsistent with an intention to revoke the entire instrument and raise a presumption that her intention was to revoke clauses 1 and 2 and leave the remainder intact as a valid will. Under the statute this may be done. See, also, Wells v. Wells, 4 T. B. Mon. 152, 16 Am. Dec. 150; Tudor v. Tudor, 17 B. Mon. 389; In re Brown's Will, 1 B. Mon. 57, 35 Am. Dec. 174; Bigelow v. Gillott, 123 Mass. 102, 25 Am. Rep. 32; 40 Cyc. pp. 1191-1193.

4. It is next urged that the will is so mutilated that it cannot be given effect. There is a diversity of opinion in the various jurisdictions as to the effect of a partial revocation upon a remaining residuary clause; some opinions holding that the latter is augmented to the extent of the revoked legacies; others holding that it is not. But in this state the question is controlled by statute thus:

"Unless a contrary intention shall appear by the will such real or personal estate, or interest therein, as shall be comprised in any devise in such will which shall fail or be void, or otherwise incapable of taking effect, shall not be included in the residuary devise contained in such will, but shall pass as in case of intestacy." Section 4843, Ky. Statutes.

It is clear from this statute that the revocation of clauses 1 and 2 would not augment the residuary clause

in the third paragraph, but would leave the property embraced in such clauses to pass as in cases of intestacy, and not necessarily affect the validity of the instrument. Appellants seem to concede that this in itself would not be a ground for revoking the entire will, but their argument is that it cannot be shown what property was devised by the omitted clauses; and therefore it cannot be determined with any degree of certainty what passed under the residuary clause, and therefore the entire paper should be rejected as being too indefinite for construction. We do not assent to this. Here without objection proof was introduced by the draftsman of the will as to the contents of the omitted clauses and this clearly establishes the undevised property. It cannot be doubted that, if testatrix had merely ran a pen mark through the words of the first and second clauses, thereby canceling them, their contents could have been proven in this condition. Indeed it is common practice to prove the contents of a lost will by parol under proper safeguards, and by analogy the same rule would apply to the contents of the revoked clauses of a will. In Osburn v. Rochester Trust & Safe Deposit Co., 209 N. Y. 54, 102 N. E. 571, 46 L. R. A. (N. S.) 983; Ann. Cas. 1915A, 101, a codicil for $1,000 was superadded to the will, the effect of which was to reduce the residuary clause by that amount. Later the codicil was revoked. Under a statute similar to ours the court held that the legacy under the revoked codicil passed as in case of intestacy and reference was had to the revoked codicil itself to fix the amount. It may be difficult to administer this rule in some cases, though that does not affect the validity of the will where such proof is made, and we do not now determine the validity of such an instrument in the absence of all evidence tending to show the contents of the revoked clauses.

5.    Lastly, it is urged that the will is void because it fails to designate the purpose of the charity with reasonable certainty. As stated in Gill's Ex'r v. Woman's Club of Louisville, 205 Ky. 731, 266 S. W. 378:

"The cy-pres doctrine has never been adopted in this state to the extent of supplying a beneficiary, or purpose, where those objects are not expressed in the instrument."

But, if such matters can reasonably be ascertained from the instrument, our court has not hesitated to give them effect. Ky. Statutes, sec. 317, provides:

Any devise "for any . . . charitable or humane purpose, shall be valid, if the . . . devise . . . shall point out, with reasonable certainty, the purposes of the charity and the beneficiaries thereof."

Illustrating this, the following devises have been held insufficient: "For charitable objects . . . in this diocese of Louisville." Spalding v. St. Joseph's School, 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107. "To any charitable uses . . . so as to do most good." Coleman v. O'Leary's Ex'r, 114 Ky. 388, 70 S. W. 1068, 24 Ky. Law Rep. 1248. "For the purposes of education or religion." Id. "For good and charitable purposes." Gerick's Ex'r v. Gerick, 158 Ky. 478, 165 S. W. 695. "Everything else I own goes to charity." Simmons' Ex'r v. Hunt, 171 Ky. 397, 188 S. W. 495.

On the other hand, the following devises have been held sufficient: "Such benevolent objects and purposes as they (the trustees), may select." Givens' Adm'r v. Shouse, 5 Ky. Law Rep. 419. "For . . . the use of a 'public seminary.' " Curling's Adm'rs v. Curling's Heirs, 8 Dana, 38, 33 Am. Dec. 475. "For the benefit of the Roman Catholic charitable institutions in his diocese." Tichenor v. Brewer, 98 Ky. 349, 33 S. W. 86, 17 Ky. Law Rep. 936. To be "distributed to the poor in his (the executor's) discretion." Thompson's Ex'r v. Brown, 116 Ky. 102, 75 S. W. 210, 24 Ky. Law Rep. 1066, 62 L. R. A. 398, 105 Am. St. Rep. 194. "To such charitable and benevolent institutions as may appear to be most useful in disseminating the gospel at home and abroad." Atty. Gen. v. Wallace's Devisees, 7 B. Mon. 611. A fund for educating poor orphans of this county to be selected by the county court who are the guardians of such, and to be confined to such as are not able to educate themselves. Moore's Heirs v. Moore's Devisees, 4 Dana, 354, 29 Am. Dec. 417. In addition, the following bequests to trustees and executors have been upheld: "To be expended 'in securing an evangelist,' and 'in the advancement of the principles of primitive Christianity as taught by the Christian Church.' " Crawford's Heirs v. Thomas et al., 114 Ky. 484, 54 S. W. 197, 21 Ky. Law Rep. 1100. An endowment fund for a specified Bible society, the inter-

est to be used, "not in paying pre-existing debts of the society, but in distributing Bibles to the destitute of the earth." Kasey v. Fidelity Trust Co., 131 Ky. 609, 115 S. W. 738. And bequests to "foreign missions. In this respect I regard Japan as an important field, and if Brother M. is then living and in Japan, regard him as a good and worthy man to invest the money." Also a bequest of money to "be sent to the country, and destitute places, that the poor may have the gospel preached to them." Miller v. Tatum, 181 Ky. 490, 205 S. W. 557. A devise "to the Southern Presbyterian Church with 'absolute discretion . . . to determine to what causes and activities of the Southern Presbyterian Church the funds bequeathed to it herein shall be devoted and in what proportions, except that none shall be expended for theological seminaries.' " Kratz v. Slaughter's Ex'rs, 185 Ky. 259, 214 S. W. 880.

Applying these principles to the facts of this case, it will be noted that the devise is to be used and expended for the benefit of the Young Women's Christian Association in Owensboro, Ky., after such an association shall be properly organized in Owensboro. The trustee is not authorized to choose the purpose or select the beneficiary, but is only given discretion to determine whether it is properly organized and is worthy. It appears in proof that there is a national organization of the Young Women's Christian Association and that a branch of this organization is now organized and located at Owensboro, Ky., under the name of the Young Women' Christian Association of Owensboro, and that the trustee has recognized it as the beneficiary under the will. Clearly, this is a valid exercise of the power vested in him, and falls within the second line of cases above cited.

Wherefore, perceiving no error, the judgment is affirmed.